DAVID ATKINS, appellant, *v.* WILLIAM A. HINMAN, appellee.

*Appeal from Schuyler.*

According to the principles of common law, a party who claims title to real estate by virtue of a sheriff's sale, must procure a judgment and execution, which authorized the sale, before he can read the sheriff's deed as evidence of title. The judgment is the foundation of title, and if void, the proceedings under it are mere nullities. The execution is the particular authority to the sheriff to make the sale, and if not in pursuance of the judgment, the acts of the sheriff are unwarranted, and his deed vests no title in the purchaser. These principles are strictly applicable to sales of land under the provisions of the "*Act concerning the public revenue*," approved February 26, 1839.

In an action of ejectment to recover the possession of land, purchased at a sheriff's sale for taxes, the plaintiff, in order to substantiate his allegation of title, must exhibit, *first*, a valid judgment against the land; *second*, a valid precept authorizing the sheriff to make the sale; and *third*, a proper conveyance of the land from the sheriff. These are essential to the validity of the title, and none of them can be dispensed with.

If a tract of land, subject to taxation, is sold for taxes, and the proceedings under the revenue law have been regular, and the owner has failed to redeem within the time limited by law, then the whole legal and equitable estate is vested in the purchaser; a new and perfect title is established, and superior to that acquired by a purchase at a sheriff's sale under an ordinary judgment, where the purchaser only succeeds to the title which the debtor had at the recovery of the judgment.

A judgment against certain lands for taxes omitted to state the day on which the collector returned his delinquent list to the Circuit Court, and "that the taxes thereon remained due and unpaid on the day of the date of the said collector's return." At a subsequent term, on motion and proof, the judgment was permitted to be amended by making the proper insertions: *Held*, that the amendments were proper, the omissions being mere matters of form and evidently clerical mistakes, and ought not to vitiate the judgment.

To a judgment against lands for non-payment of taxes, it was objected that it was originally entitled in any pending suit, the judgment having been amended by adding the proper caption after its original entry: *Held*, that the entry on the docket was not a necessary part of the judgment.

A precept for the sale of lands for taxes showed when the judgment against

them was rendered, the description of the land, the amount of taxes and costs on each tract, and for what year due and unpaid, and the order of the Court directing the sale: *Held,* that it was a substantial compliance with the statute requirements.

By the forty third section of the Revenue Act of 1839, after the plaintiff has produced a sheriff's deed founded on a valid judgment and precept, the defendant is precluded from questioning the validity of the title acquired by such deed, unless he first show that he, or the person under whom he claims, had title to the land at the time of the sale for taxes, or that the title was obtained from the United States or this State, subsequent to such sale.

EJECTMENT in the Schuyler Circuit Court, brought by the appellee against the appellant, and heard before the Hon. Norman H. Purple and a jury, at the April term 1844. Verdict for the plaintiff below, and judgment thereon, and a writ of *habere facias possessionem* awarded.

The material portions of the evidence and proceedings are fully stated in the Opinion of the Court.

*W. A. Minshall,* for the appellant.

I.   The judgment and order of sale in 1840 is void, for not pursuing the form given by the statute, and in not filling the blanks left in the statutory form with the substantial allegations of the time at which the Collector made his return of the list of lands delinquent for taxes, and in not further stating, "*and that the taxes thereon remained due and unpaid on the day of the date of said collector's return.*" The form in this proceeding must be strictly pursued, and the facts as to the return of the Collector at the time specified by law, and that the taxes then remained due and unpaid, must in this summary proceeding affirmatively appear upon the face of the record to give the Court jurisdiction. The order of sale without these facts appearing on the face of the record is not voidable only, but absolutely void. *Thatcher* v. *Powell's Lessee,* 5 Peters' Cond. R. 28–31; *Stead's Executors* v. *Course,* 2 Peters' Cond. R. 151–154, and notes; *McClung* v. *Ross,* 4 Peters' Cond. R. 603–606; *Buckmaster* v. *Carlin,* 3 Scam. 104; *Swiggart* v. *Harber,* 4 Scam. 364; *Garrett* v. *Wiggins,* 1 Scam. 335; *Hill* v. *Leonard,* 4 Scam. 140; *Smith* v. *Hileman,* 1 Scam. 323–5; *Fitch* v. *Pinckard,* 4 Scam. 70.

The principles maintained by these cases are applicable to all the proceedings under the law of 1839, concerning the title prior to the making of the deed. *Hinman* v. *Pope*, 1 Gilman, 131; *Williams* v. *Peyton*, 4 Peters' Cond. R. 395, 396, 397.

This is a special power affecting private property and the officer must act in strict conformity to the law giving the power, and the purchaser is bound to inquire whether the officer has so acted. 2 Peters' Cond. R. 151, before cited; *Gilbert* v. *Columbia Turnpike Co.*, 3 Johns. Cases, 108; *Darning* v. *Smith*, 3 Johns. Ch. R. 344; *Rex* v. *Croke*, 1 Cowper, 15–18.

II. The order of the Court at the September term 1844, amending the judgment, order of sale and precept of 1840, *cannot help it*, because there was nothing to amend. The previous order was a nullity; from the face of the record the Court never had jurisdiction, and clearly no power to amend. Could the Court in this kind of summary proceeding under a special statute, which prescribes its course, and that course not pursued in 1840, in 1844 make, by amendment, that *legal*, which before was *illegal and void*. The whole proceeding was *corum non judice*. *Thatcher* v. *Powell's Lessee*, 5 Peters' Cond. R. 28–31, and the authorities above cited, and particularly the cases in 1 Scam. 323, 325; 3 Johns. Cases, 108, and 3 Johns. Ch. Rep. 344; 1 Cowper 15–18.

III. The Court, by the Common Law, and by the provisions of our statute, had no power or right over the judgment and record made at a term previous, by new entries to alter or change the record at a subsequent term of the Court in which the judgment was rendered. 1 Petersdorff's Com. Law 504, 537; R. L. 1833, 64, § 5; Gale's Stat. 49, § 5, and 533, § 20; Rev. Stat. 49, § 5. After the term is ended, clerical omissions only can be amended, and the making or omitting an order in the order book is a judicial, not a clerical error. 1 U. S. Dig. 157, §§ 354, 362, 364, 365, 368, 371, 372, 374.

The amendment was substantial, and for that reason, even in an ordinary proceeding between parties regularly in Court, could not have been made. *Botkin* v. *Pickaway Co.*,

Ohio Cond. R. 375. The thirtieth section of the Act directs
that this form shall be pursued, and that makes the form in
this proceeding substance.

The amendment operates to the prejudice of third persons,
not parties or privies, or in any way connected with the par-
ties to the suit of *Pike* v. *Hall,* it being a collateral pro-
ceeding, in which the order of amendment was made. And
for this reason, according to common law principles, not
allowable. The defendant in this suit never had any notice
of the application to amend the judgment, which he would
be entitled to, if the proceedings were amendable. But not
having had such notice, the amendment is consequently void
as to him, unquestionably. An amendment will never be
allowed, when it will operate prejudicially upon the rights
of third persons. *Hart* v. *Pasmore,* 4 Maule & Selwyn; 1
Petersdorff's Com. Law, 503; *Hunter* v. *Todd,* 1 Scam. 551.

IV. But if the Court had power to make the amendment,
and the judgment and order of sale were amendable in these
particulars, the judgment is still void because the statement
in the recital of the judgment as amended, "that the Col-
lector reported the delinquent list on the eighth day of March,
1840, for the taxes of 1839," if true, shows that the Court
had no jurisdiction. There then being no term of the Cir-
cuit Court for the county of Schuyler, and that not being
the time fixed by law for holding said Court, the report was
not made in pursuance of law, and therefore void, and all the
subsequent proceedings thereon founded. Revenue Law
1839, 12, 14, §§ 25, 27, 32. The further amendment, that
the taxes remained due and unpaid at that date, would also
prove unavailing, as the report is to be made to a term of
Court which was not held until afterwards. See same sec-
tions of the Act of 1839; and from this it appears that the
law had not been sufficiently complied with to authorize the
Court at its March term 1840, or at the September term
1844, to render any judgment in the premises. Laws of 1839,
§§ 25, 26, 27, 28, 29, 30, 31, 32.

V. If the Court had the power to amend, the amendment
could only be made from the Collector's report and notice,

with the advertised list; and in reviewing the amendment with a view to inquire and ascertain whether there was any thing to amend by, we insist that the Court ought to have examined the original report of the Collector and advertised list with the notice on file, to see if the foundation is laid to enter a judgment before an amendment could be made. For the purpose of showing that no such foundation was laid, at the March term 1840, we offered on the trial of this cause, in connection with the question of amendment, the Patent and advertised list and notice, showing that the lands in question were not listed in the name of the Patentee, nor advertised in giving the notice as the statute requires. The notice fixing the second Monday of April, 1840, as the time of sale, when the twenty sixth section of the Act requires the sale to be advertised to take place on the second Monday next succeeding the term of the Court at which judgment was rendered, and also to show that the land in controversy was not described in the advertisement. And if it appeared from the report, which is the fact, that the land was not listed as the law required, or not described, or that the notice was otherwise not in accordance with the law, the Court had no jurisdiction to enter the judgment against the land in controversy, and, therefore, no power or authority to make the amendment.

VI.   The same reasons and principles of law apply to the precept offered in evidence herein with others, following, to wit:   The precept by the thirty first section of the Act of 1839, is to be a copy of the Collector's report, together with the order of the Court thereon, &c.,—the form of which is prescribed by the statute and specially directed to be pursued.   §§ 29, 30, 31.   In this the precept is void, because it does not copy the judgment as it originally was, nor is it a copy of the judgment as amended.   The precept recites that the Collector returned his report to the Circuit Court of said county, on the —— day of April, 1840; the judgment reciting that it was made on the eighth day of March, 1840, thus showing the Collector's report to have been made at a time subsequent to the entry of the judgment of the Court,

when, by law, the report must precede the judgment; and by the certificate of the clerk of the Court to the precept it appears that the report of the Collector was made at a time different from either the amended judgment or the amended precept, that time being the sixteenth day of March, 1840. This process to be valid must show on its face that such a judgment was rendered by a competent Court as will justify its emanation. *Hinman* v. *Pope*, 1 Gilman, 131.

VII. The order of the Court in 1844, amending the judgment and precept, does not authorize the precept to be amended in this particular, nor is the precept amended in the particular manner required by the order of amendment by inserting the words, "and that the taxes thereon remained due and unpaid, on the day of the date of the said Collector's return."

VIII. The judgment and precept originally if held to be good, notwithstanding the preceding objections, yet are void; in this case there being no description in the judgment or precept of the lands in controversy, and it not appearing in the caption of the Collector's report as recited in the judgment and precept, nor any thing appearing upon the report opposite to, or in connection with the name of the Patentee or present owner, designating in what section, township and range, said land is situated, they are for this reason void as against this land, and as such lay no foundation for the introduction of the sheriff's deed.

IX. There being no foundation laid for the deed by the introduction of a legal judgment and precept, under the tax law of 1839, against the lands in controversy, the deed should have been excluded. *Hinman* v *Pope*, 1 Gilman, 131.

X. We had the right to show by way of rebutting the statutory *prima facie* character of the deed, to prove that the land in question was not listed in the manner required by law, nor advertised as required by the twenty sixth section of the Act of 1839, and for this purpose the Patent and advertised list and notice were offered. The Court admitted the Patent, but excluded the advertisement and notice, and thereby prevented us from comparing the lands advertised

with the land described in the Patent, and also, from asking instructions to the jury as to the effect of the evidence so offered.

*S. T. Logan,* for the appellee.

The Opinion of the Court was delivered by

TREAT, J.* This was as an action of *ejectment* commenced in the Schuyler Circuit Court by William A. Hinman against David Atkins, for the recovery of the south half of section five (5), in township three (3) north of range four (4) west. On the trial before a jury, the plaintiff offered to read in evidence, from the records of the Schuyler Circuit Court, a judgment entered thereon at the March term 1840, in the words and figures following, to wit:

"State of Illinois,   ⎰ ss.   Whereas John G. McHatton,
Schuyler county,   ⎱
Collector of said county, returned to the Circuit Court of said county on the —— day of ——, 1840, the following tracts and parts of tracts of land as having been assessed for taxes by the Assessor of said county of Schuyler, for the year 1839, and that the respective owner or owners have no goods and chattels on which the said Collector can levy for the taxes, interest and costs due and unpaid on the following described lands, to wit:

"List of lands and other real estate situate in the county of Schuyler, and State of Illinois, on which taxes remain due and unpaid for the year herein set forth.

(And among others are the following:)

| Patentee. | Present owner | Description. | Acr's | Yr. | Val | Tax. | Costs | Total |
|---|---|---|---|---|---|---|---|---|
| Leonard Mitchell | N. Y. & B. Land Co. | N. ⅓ 4, 1 S. 1 W. | 160 | 1839 | 800 | 4 80 | 16 | 4·96 |
| Robert Long | do | N. W. 4, " " | " | " | 640 | 3·84 | " | 4·00 |
| James Jenkins | Ill. Land Co. | S. E 1, 3 N. 4 W | " | " | 240 | 1 44 | " | 1 60 |
| John Coleby | John Fleming. | S. E. 4, " " | " | " | 960 | 5 76 | " | 5·72 |
| Martha James hrs | Ill. Land Co. | S ½ 5, " " | 320 | " | 1920 | 11 52 | " | 11·68 |

"And whereas due notice has been given of the intended application for a judgment against said lands, and no owner hath appeared to make defence or shew cause why judgment should not be entered against the said lands for the taxes, in-

---

* WILSON, C. J., did not sit in this case.

terest and costs due and unpaid thereon for the year or years herein set forth: Therefore, it is considered by the Court that judgment be, and is hereby entered against the aforesaid tracts of lands and parts of tracts of land in the name of the State of Illinois, for the sum annexed to each tract or parcel of land, being the amount of taxes, interest and costs due severally thereon. And it is ordered by the Court, that the said several tracts of land, or so much thereof as shall be sufficient of each of them, to satisfy the amount of taxes, interest and costs annexed to them severally, be sold as the law directs."

The plaintiff also offered in evidence a precept issued on the aforementioned judgment, as follows:

"State of Illinois,   } ss.   Whereas John G. McHatton,
Schuyler county,   }   Collector of said county, returned to the Circuit Court of said county on the —— day of April, 1840, the following tracts and parts of tracts of land as having been assessed for taxes by the Assessor of said county of Schuyler, for the year 1839, and that the respective owner or owners have no goods and chattels within his county on which the said Collector can levy for the taxes, interest and costs due and unpaid on the following described lands, to wit:

(And among others are the following:)

| Patentee's name. | Present owners. | Description. | Acres. | Value. | Tax. | Costs. | Total. | Costs in Court. | Total am't of tax and costs. | Name of persons purchasing each tract. | Certificate. | Total. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Leon'd Mitchell | N.Y.& B. Land Co. | N E 4 1 S 1 W | 160 | 800 | 4·80 | 16 | 4·96 | 6 | 5·02 | Lamb & Dunlap | 25 | 5·27 |
| Robert Long | do· | N W 4 " " | " | 640 | 3·84 | do | 4·00 | " | 4·06 | Lamb & Dunlap | " | 4·31 |
| James Jenkins | Ill Land Co. | S E 1 3 N 4 W | " | 240 | 1·44 | do | 1·60 | " | 1·66 | Lamb & Dunlap bot 160 | " | 1·91 |
| John Coleby | John Fleming | S E 4 " " | " | 960 | 5·76 | do | 5·72 | " | 5·78 | J A & W B Fleming bot 140 | " | 6·03 |
| Martha James hrs | Ill Land Co· | S 1-2 5 " " | 320 | 1920 | 11·52 | do | 11·68 | · | 11·74 | Wiliam A Hinman bot 320 | " | 11·99 |

"And whereas due notice has been given of the intended application for a judgment against said lands, and no owner hath appeared to make defence, or shew cause why judgment should not be entered against the said lands, for the taxes, interest and costs due and unpaid thereon, for the year herein set forth. Therefore, it is considered by the Court, that judgment be and is hereby entered against the aforesaid tracts of land, and parts of tracts of land in the name of the State of Illinois, for the sum annexed to each tract

or parcel of land, being the amount of taxes, interest and costs due severally thereon. And it is ordered by the Court, that the said several tracts of land, or so much thereof as shall be sufficient of each of them to satisfy the amount of taxes, interest and costs annexed to them severally, be sold, as the law directs.

State of Illinois, } ss.
Schuyler county, } ss. I, Robert A. Glenn, clerk of the Circuit Court in and for said county and State, do hereby certify that the foregoing is a correct copy of the list of lands reported to said Court, as delinquent for taxes for the year 1839, at the term of said Court held at Rushville, in and for said county, commencing on Monday, the sixteenth day of March, A. D. 1840, together with the order of the said Court thereon. In testimony whereof, I have hereunto set my hand and affixed the seal of said Court at Rushville, this eighth day of April, in the year of our Lord, one thousand eight hundred and forty.

Robert A. Glenn, clerk."

And on which precept was the following return: .

"By virtue of the foregoing process to me directed and delivered by the clerk of the Circuit Court of Schuyler county, Illinois, I did, on the thirteenth, fourteenth, fifteenth and sixteenth days of April, A. D. 1840, expose to public sale, at the Court House door in Rushville in said county, all the following tracts and parts of tracts of land and town lots, for the amount of tax and costs due thereon for the year, A. D. 1839; against which judgment was rendered, except such as are marked paid, each lot sold separately and struck off to the person whose name is set opposite the same, as will more fully be shown by reference to the record of the clerk of the County Commissioners' Court.

Given under my hand this twentieth day of April, A. D. 1840.

John G. McHatton, sheriff."

And in connection with the judgment and precept, the plaintiff offered in evidence an order of the Schuyler Circuit Court made at the September term 1844, in the words following, to wit:

"Pike *v.* Hall. In ejectment. In this cause, a motion was made by the defendant to amend a judgment in this Court and the proofs therein, in a suit for taxes, wherein the People of the State of Illinois are plaintiffs, and Leonard Mitchell and others are defendants; docketed at the March term of this Court, in the year 1840, for the taxes of 1839, when on argument of counsel, it is ordered that said judgment record be so amended as to direct in said record a caption of the following words: "State of Illinois *v.* Leonard Mitchell and others; suit for taxes." And on the fifth line of said judgment, to insert in the blanks of said line, so as to read on the "eighth day of March, 1840;" and on the ninth line of said record, after the figures, "1839" to insert the words "and that the taxes thereon remained due and unpaid on the day of the date of said Collector's return." And it is further ordered that the precept issued by the clerk of the said Court, on said judgment, be so amended as to insert on the sixth line of said precept, after the figures "1839" the words "and that the taxes thereon remained due and unpaid on the day of the date of the said Collector's return."

The plaintiff then offered in evidence a deed from the sheriff of Schuyler county for the premises in controversy as follows:

"Know all men by these presents, that whereas at the March term 1840, of the Circuit Court of Schuyler county Illinois, a judgment was obtained in said Court in favor of the State of Illinois, against the whole of a certain tract of land, being the south half section No. five, of township three north, of range four west containing three hundred and twenty acres situate in the county of Schuyler and State of Illinois, for the sum of eleven dollars and seventy four cents, being the amount of taxes, interest and costs assessed upon said tract of land for the year 1839, and whereas on the fifteenth day of April, 1840, I, John G. McHatton, sheriff of the county aforesaid by virtue of a precept issued out of the Circuit Court of the county aforesaid, dated the eighth day of April, 1840, and to me directed, did expose to public sale at the door of the Court house in the county aforesaid, in conformity with all the requisitions of the statute in such

case made and provided, the tract of land above described for the satisfaction of the judgment so rendered as aforesaid, and whereas at the time and place aforesaid, William A. Hinman, of the county of Schuyler and State of Illinois, having offered to pay the aforesaid sum of eleven dollars and seventy four cents for three hundred and twenty acres, being the whole of the tract of land above described, which was the least quantity bid for, the said tract of land was stricken off to him at that price. Now, therefore, I, John G. McHatton, sheriff as aforesaid, for and in consideration of the said sum of eleven dollars and seventy four cents, to me in hand paid by the said William A. Hinman at the time of the aforesaid sale, and by virtue of the statute in such cases made and provided, have granted, bargained and sold, and by these presents do grant, bargain and sell unto the said William A. Hinman, his heirs and assigns, the whole of the south half of section No. five (5), of township No. three north, of Range No. four west, containing three hundred and twenty acres of land, situate in the county of Schuyler and State of Illinois as aforesaid, to have and to hold unto him the said William A. Hinman his heirs and assigns forever, subject however to all the rights of redemption provided by law. In witness whereof, I, John G. McHatton, sheriff of the said county as aforesaid, by virtue of the authority aforesaid, have hereunto subscribed my name and affixed my seal this twenty fifth day of April, 1842.

John G. McHatton, Sheriff, [L. s.]
of Schuyler county, Illinois.

The deed was duly acknowledged on the thirtieth of April, 1842, before the clerk of the County Commissioners' Court of Schuyler county, and the proper certificate thereof indorsed on the deed. The defendant objected to the introduction of all the foregoing evidence, but the objection was overruled by the Court, and the testimony read to the jury, to which the defendant excepted. The plaintiff then proved, that the defendant was in the possession of the premises at the institution of the suit, and closed his case.

The defendant then read in evidence a Patent from the

United States, dated the seventh of November, 1818, conveying the premises in question to Martha James, mother and only heir at law of David James deceased.

The defendant then offered to read in evidence the advertisement and notice of the collector, for the purpose of showing that the land was not listed and advertised in pursuance of law, to the introduction of which testimony the plaintiff objected, and the Court sustained the objection, and the defendant excepted. No further testimony was offered on either side. The jury found the issue in favor of the plaintiff, and judgment was entered, that the plaintiff recover the premises in controversy, and have his writ of *habere facias possessionem.*

The defendant prosecuted an appeal to this Court, and now assigns for error, the decisions of the Circuit Court, in admitting the evidence objected to by him, and in excluding the evidence offered by him.

According to the principles of the common law, a party who claims title to real estate by virtue of a sheriff's sale, must produce a judgment and execution which authorized the sale, before he can read the sheriff's deed as evidence of title. The judgment is the foundation of the title, and if void, the proceedings under it are mere nullities. The execution is the particular authority to the sheriff to make the sale, and if not in pursuance of the judgment, the acts of the sheriff are unwarranted and his deed vests no title in the purchaser. This Court decided in the case of *Hinman* v. *Pope,* 1 Gilman, 131, that these principles are strictly applicable to the sales of land under the provisions of the "*Act concerning the Public Revenue,*" approved February 26th, 1839. The plaintiff, therefore, in an action of ejectment to recover the possession of land which he has purchased at a sheriff's sale for taxes, in order to substantiate his allegation of title, must exhibit, *first,* a valid judgment against the land; *second,* a valid precept authorizing the sheriff to make the sale; and *third,* a proper conveyance of the land from the sheriff. These are essential to the validity of the title; none of them can be dispensed with. When these requisites are

Atkins v. Hinman.

shown, the plaintiff may safely rest his case, and it must prevail unless overthrown by his adversary. He is not required to go back of the judgment, and show that a particular person had title to the land, either at the time of the assessment or at the rendition of the judgment. The judgment is against the land and not against a particular individual. The land itself is sold and not a particular interest in it. If the land was subject to taxation, and the proceedings under the revenue law have been regular, and the owner has failed to redeem within the time limited by the law, then, the whole legal and equitable estate is vested in the purchaser. A new and perfect title is established. This results from the paramount authority of the State to levy taxes on property within its limits and coerce the payment by subjecting the property to sale. It is one of the necessary and inherent rights of the sovereign power. This case, therefore, is not like the one of a sale under an ordinary judgment, where the purchaser only succeeds to the title, which the debtor had at the recovery of the judgment.

We now proceed to inquire, whether the judgment and subsequent proceedings were properly admitted in evidence in the present case.

The form of the judgment is given in the twenty ninth section of the Act before referred to, and the thirtieth section declares, that such form "shall be pursued as near as the nature of the case will permit." The judgment in question, as originally entered, is in some respects variant from the prescribed form. The day on which the Collector returned the delinquent list to the Circuit Court is left blank; and the statement, "that the taxes thereon remained due and unpaid on the day of the date of the said Collector's return," is omitted. These are the only omissions in the judgment. The commencement or caption of the Collector's report is copied into the judgment. With these exceptions, the judgment is in the required form. The form of the Collector's report is prescribed in the twenty fifth section, and the caption furnishes the only evidence of the non-payment of taxes. In this case it is carried into the record and made part of

the judgment. The evidence upon which the Court acted in this particular is inserted in the judgment, instead of the legal conclusion resulting from the evidence. The report shows the non-payment of the taxes, and to this extent the report is adopted as part of the judgment. The judgment shows as fully that the taxes were due and unpaid, as if it contained the precise language of the statute. This is equivalent and sufficient. The mere failure to insert the day on which the report was presented, ought not to invalidate the judgment. The twenty fifth section, as changed by the fourth section of the Act of February 1st, 1840, requires the Collector to file his report five days previous to the first day of the term of the Court. The presumption of the law is, that he performed his duty in this respect. The provision, however, is directory to the Collector, and his failure to comply with it literally does not affect the jurisdiction of the Court. It is enough for this purpose, that the report is made before the case is heard and the judgment pronounced. The judgment states that the report was presented, but omits to state on what precise day. The report was before the Court, and was the foundation of its judgment. The judgment shows on its face, that all of the material requisitions of the statute were complied with. The year for which the taxes were assessed; the description of the land and the amount of the taxes on each tract; the fact that the Collector was unable to obtain payment of the taxes, by the seizure and sale of the personal property of the owners, and the compliance with the law by the Collector in making the proper return, and in giving the requisite notice of the application for judgment, all clearly appear from the judgment. The omissions and variations in the judgment are merely in matters of form, and evidently clerical mistakes, which ought not to vitiate the judgment, especially when it is apparent from the face of the proceeding that the Court had jurisdiction of the subject matter, and proceeded to make the proper adjudication. Another objection taken to the judgment is, that it is not entitled in any pending suit. The application for judgment is required by the twenty eighth section to be entitled in a particular way, and placed

at the head of the common law docket. The object of this requisition is to bring the matter directly to the notice of the Court, that it may dispose of it before progressing with the trial of causes. The entry in the docket is not a necessary part of the judgment.

Again, it is insisted, that the judgment is void as it respects the tract of land in controversy, because the township and range are not given. There is no just foundation for this objection. The marks which follow the section, clearly refer to the township and range of the two preceding tracts. This reference makes the description complete, and places the matter beyond all dispute. The judgment, as originally entered, was valid, irrespective of the amendments subsequently made. The order, however, allowing the amendments, was proper. They were only the correction of clerical mistakes, and could prejudice no person's rights. They brought no new matter into the case. The time when the report was presented could at once be ascertained by reference to the indorsement of the clerk, on receiving it; and the report and judgment both furnished the evidence to authorize the other amendment. The amendments gave no additional efficacy to the proceedings, but put them in stricter conformity to the provisions of the statute.

What has been said respecting the judgment, is equally applicable to the precept, and disposes of most of the objections to it. The thirty first section, as modified by the ninth section of the Act of February 1st, 1840, requires the clerk to make out, under the seal of the Court, a copy of the judgment, and declares that it shall constitute the process on which the land shall be sold. This was substantially complied with in the present case. The precept shows when the judgment was rendered, the description of the land, the amount of taxes and costs on each tract, and for what year due and unpaid, and the order of the Court directing the sale. The statement that the report was made in April is manifestly a mistake, for the precept shows that the judgment was rendered in March, on a report made previously.

The forty second section gives the form for the sheriff's

deed; the deed in this case, strictly pursues the form, and states correctly the precise proceedings. The judgment and precept being valid, the deed was not obnoxious to any just exception.

It is the opinion of the Court that the judgment, precept and deed were properly admitted in evidence, and that these, with the additional proof that the defendant was in the possession of the premises at the commencement of the suit, made out a *prima facie* case on the part of the plaintiff.

In dismissing the various objections taken to these proceedings, I cannot forbear the remark that they are purely technical. The duty of every citizen to contribute, in proportion to the value of his estate, towards the support of the Government which protects him in the enjoyment of his rights, must be acknowledged by all. The present revenue laws are liberal in their character; the rate of taxation is uniform and reasonable; the tax payer can readily ascertain the amount he is required to pay. He has several months in which to make payment after his property is assessed. If he omit to pay, and his land is sold, he has still the right to redeem within two years from the sale. If, after all this delay, he suffers his title to be transferred to the purchaser, the loss must be attributed to his gross disregard of his duties and interests, and not to the fault or injustice of the law. He should not, then, be permitted to defeat the title of the purchaser, by interposing mere technical objections. If allowed to do it, he is enabled to take advantage of his own laches and wrong, not only to defeat the claim of the purchaser, but to avoid altogether the payment of his share of the public burdens. Where all the material requisitions of the laws have been substantially complied with, Courts should not hesitate to sustain rights fairly acquired under them. It is time that the object and design of these enactments should be regarded. Judges should not be on the alert to discover frivolous objections, and resort to mere technical rules to sustain them, in order to defeat the claim of a purchaser. Such objections are generally insisted on, and have in some instances been countenanced by the Courts. They proceed from a

one sided view of the subject. The allegation that the land is sacrificed for a trifle, and the purchaser is acquiring acres for cents, is alone regarded, while the obligations of the tax payer and the rights of the Government are not considered. If the proceedings under these laws are to be subjected to mere technical tests, taxes will remain unpaid, individuals will cease to bid at sales, and thus the principal object of the laws may be frustrated. But, if on the other hand, by the application of reasonable rules, some assurance is given that the titles will be sustained, the taxes will be generally paid, the competition at the biddings will be increased, and instead of whole tracts of land being sold to pay the the taxes due upon it, small portions only will suffice.

The only remaining question to be considered is, whether the Circuit Court erred in rejecting the evidence offered by the defendant.

As we have already observed, the plaintiff made out a *prima facie* case. It must prevail unless successfully assailed by the defendant; the forty third section of the Act under which these proceedings were had, as modified by the seventy third section of the Act of March 3d, 1845, after providing that the sheriff's deed shall be *prima facie* evidence of certain facts, proceeds to declare, that "in controversies and suits involving the title to land claimed and held under and by virtue of a deed executed by the sheriff as aforesaid, the person claiming title, adverse to the title conveyed by such deed, shall be required to prove, in order to defeat the said title, either that the said land was not subject to taxation at the date of the sale; that the taxes had been paid; that the land had never been listed and assessed for taxation; or that the same had been redeemed, according to the provisions of this Act, and that such redemption was had or made for the use and benefit of persons having the right of redemption under the laws of the State. But no person shall be permitted to question the title acquired by a Collector's deed, without first showing that he or she, or the person under whom he or she claims title, had title to the lands at the time of the sale, or that the title was obtained from the United States or this

State, after the sale, and that all taxes due upon the lands, have been paid by such person, or by their agent, or the person under whom he claims title as aforesaid."

According to the provisions of this section, after the plaintiff has produced a sheriff's deed founded on a valid judgment and precept, the defendant is precluded from questioning the validity of the title acquired by such deed, unless he first shows, that he or the person under whom he claims, had title to the land at the time of the sale for taxes, or that the title was obtained from the United States or this State subsequent to such sale. He must bring himself within this provision of the law before he is allowed to assail the plaintiff's title. The sheriff's deed is conclusive against all the world but those having title to the premises. If the defendant has title, or can connect himself with the title of another person, he is then permitted to defeat the title of the purchaser, by establishing any of the defences enumerated and authorized in the foregoing section. And perhaps he may go further and accomplish the same object, by disproivng any of the matters, the existence of which, the deed is declared to furnish *prima facie* evidence.

In this case the defendant did not place himself in the proper position to attack the plaintiff's title. He neither showed title in himself, or connected his possession with the title of any other person. The patent was only evidence of title in Martha James. He failed to show that he has succeeded to her title, or that he was her tenant, or the tenant of any one claiming title through her. Omitting wholly to prove that he had any subsisting right to the land, he was precluded by the express provisions of the statute, by going behind the payment and insisting that the land was not listed and advertised in pursuance of law. The evidence offered by him was, therefore, properly excluded by the Court.

The judgment of the Circuit Court is affirmed with costs.

*Judgment affirmed.*