JAMES HADLEY *et al. v.* JOHN HADLEY *et al.*

(*Nashville.* December Term, 1904.)

1. **TAXATION.** Lien against whole estate, including remainder estate, though land is assessed to life tenant only.

Our statutes (Acts 1897, ch. 1, secs. 4 (1), 27; 1899, ch. 435, secs. 5 (1), 33; 1901, ch. 174, secs. 5 (1), 32; 1903, ch. 258, secs. 5 (1), 32) create a lien for taxes against the whole estate, including the remainder estate, although the land is assessed to the life tenant only, and thus change the previously existing law. (*Post, pp.* 158-163.)

Acts cited and construed: 1897, ch. 1, secs. 4 (1), 27; 1899, ch. 435, secs. 5 (1), 33; 1901, ch. 174, secs. 5 (1), 32; 1903, ch. 258, secs. 5 (1), 32.

Cases cited and approved as to previously existing law: Ferguson v. Quinn, 97 Tenn., 48.

2. **SAME.** Same. Statutes providing for assessment of mineral, timber, and other interests in land do not require a remainder estate to be assessed separately to the remainderman.

Our statutes (Acts 1895, ch. 120, sec. 6 (7); 1897, ch. 1, sec. 4 (6); 1899, ch. 435, sec. 5 (5); 1901, ch. 174, sec. 5 (5); 1903, ch. 258, sec. 5 (5), providing for the assessment of all mineral, timber, and other interests in real estate to the owner thereof, to be assessed as real estate, have no application to lands other than those containing mineral, timber, and other like interests owned separately from the general freehold, and do not require that the remainder estate in land shall be assessed to the remainderman. (*Post, pp.* 163, 164.)

Acts cited and construed: 1895, ch. 120, sec. 6 (7); 1897, ch. 1, sec. 4 (6); 1899, ch. 435, sec. 5 (5); 1901, ch. 174, sec. 5 (5); 1903, ch. 258, sec. 5 (5).

Hadley v. Hadley.

3.  **SAME.**  Statutes making taxes assessed to a life tenant a lien
    on remainder estate are constitutional.

    Our statutes (Acts 1897, ch. 1, secs. 4 (1), 27; 1899, ch. 435, secs.
    5 (1), 33; 1901, ch. 174, secs. 5 (1), 32; 1903, ch. 258, secs. 5
    (1), 32, creating a lien against the remainder estate, where the
    land is assessed to the life tenant, are not repugnant to the
    provisions of our State and federal constitutions (State const.,
    art. 2, sec. 28; art. 1, sec. 8; U. S. const., 14th am.) requiring
    all property to be taxed according to its value, and forbidding
    the deprivation of property without due process of law.  (*Post,
    pp. 159-175.*)

    Acts cited and construed:  1897, ch. 1, secs. 4 (1), 27; 1899, ch.
    435, secs. 5 (1), 33; 1901, ch. 174, secs. 5 (1), 32; 1903, ch. 258,
    secs. 5 (1), 32.

    Constitution cited and construed:  Art. 1, sec. 8; art. 2, sec. 28;
    U. S. const., 14th am.

    Cases cited and approved:  Whyte v. Nashville, 2 Swan, 364; An-
    derson v. Hensley, 8 Heis., 834; Nashville v. Cowan, 10 Lea,
    209; Stovall v. Austin, 16 Lea, 700; Ferguson v. Quinn, 97
    Tenn., 46; Thorington v. Montgomery, 88 Ala., 548, 553; Veredry
    v. Dotterer, 69 Ga., 194, 198; Dunlap v. Gallatin Co., 15 Ill., 7,
    9; Sinclair v. Learned, 51 Mich., 335, 344; Lacey v. Davis, 4
    Mich., 140; Watkins v. Green, 101 Mich., 493, 498; Chaplin v.
    United States, 29 Ct. Cl., 231, 233; Jones v. Randle, 68 Ala., 260;
    Insurance Co. v. Lott, 54 Ala., 499; Mayor v. Baldwin, 57 Ala.,
    61; Land Co. v. Ayres, 62 Ala., 413; Bank v. Mobile, 62 Ala.,
    284; Underhill v. Calhoun, 63 Ala., 216; State v. Mining Co.,
    14 Nev., 221; O'Grady v. Barnhisel, 23 Cal., 294; State v. Sar-
    geant, 76 Mo., 557; Hayden v. Foster, 13 Pickering, 494; Thomp-
    son v. Carroll, 24 How., 422; In re Page, 60 Kan., 842; Stevens
    v. Railroad, 13 Blatchf., 104; Nichol v. Ames, 173 U. S., 509;
    Hinchman v. Morris, 29 W. Va., 673; Short v. State, 80 Md., 392;
    Appleton v. Hopkins, 5 Gray, 530; Cummings v. Cummings. (C.
    C.), 91 Fed., 602; Moore v. Byrd (N. C.), 23 S. E., 968; Oster-

berg v. Trust Co., 93 U. S., 424; Atkins v. Hinman, 7 Ill., 437-439, 449.

4.   SAME. · Penalty on taxes against life tenant do not attach to remainder estate for nonpayment by life tenant.

The remainder estate is not liable for the penalty prescr'bed by statute for the nonpayment of taxes, where assessed to life tenant and not paid by him, although such remainder estate is liable for the taxes.  (*Post, pp.* 175, 176.)

Acts cited and construed:   1897, ch. 1, secs. 59, 66; 1899, ch. 435, sec. 50; 1901, ch. 174, sec. 49; 1903, ch. 258, sec. 49.

### FROM DAVIDSON.

Appeal and writ of error from the Chancery Court of Davidson County.—JOHN ALLISON, Chancellor.

ATTORNEY-GENERAL CATES, for the State.

SAMUEL N. HARWOOD, for Davidson County.

N. D. MALONE, for Robert L. Hadley's heirs.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The general question presented on this record is whether, under the assessment laws of the State, the remaindermen under the will of John L. Hadley who died in 1870, are liable for the State, county, and city taxes assessed to Robert L. Hadley, the life tenant.

Hadley v. Hadley.

The chancellor so decreed, and the remaindermen appealed.

The facts presented on the record are that Robert L. Hadley, under the will of his father, J. L. Hadley, was the life tenant of several tracts of land in the fourth district of Davidson county and in a house and lot in the city of Nashville. The life tenant died July 10, 1904, owing about $1,820 of taxes, interest, penalties, and costs accumulated since 1892, and which taxes were assessed to Robert L. Hadley, the life tenant. The remaindermen have now come into the possession of said property under the will of their grandfather, John L. Hadley, deceased, and find this accumulation of taxes.

A partition bill was filed by some of these remaindermen for a division of said property, and the chancellor held that the property was incumbered by a lien for the life tenant's taxes, amounting to about $1,820.11, less $208 penalties and $28 taxes for the year 1892, which accrued before passage of the act of 1897. Prior to Act 1897, p. 5, c. 1, the property was assessed in the name of the owner, for the payment of which his personalty was liable, and should be subjected before resorting to the realty. The taxes, under that system, were assessed to the life tenant in possession, and the life estate was liable for their payment. *Ferguson* v. *Quinn*, 97 Tenn., 48, 36 S. W., 576, 33 L. R. A., 688.

In the latter case it was held that neither a remainder estate nor its owner is liable under our statutes for taxes accrued against land during the existence of the

life estate. The life estate and its owner are alone subject to this burden. The tax lien attaches to the life estate alone, and the sale for taxes affects only the life estate. The life tenant is the owner of lands for purposes of taxation.

It was further held under that system of taxation that the payment by remaindermen of taxes for which the life estate and its owner are alone liable is officious, and the amount cannot be recovered or enforced against the life estate by suit.

It was further held that remaindermen cannot maintain a bill *quia timet* to impound the rents of land and compel their application to the payment of delinquent taxes that have accrued during the life estate, or to sell the life tenant's interest for that purpose.

The broad insistence now made is that the present owners, being merely remaindermen until the decease of said Hadley on July 10, 1904, are not liable for said taxes, nor are said taxes a lien upon their interests in the remainder.

It is conceded on behalf of the State that the case of *Ferguson* v. *Quinn* would be determinative of the question herein involved but for the enactment of subsequent statutes. It is said that in order to remedy the holding of this court in *Ferguson* v. *Quinn,* decided at Jackson in the April term, 1896, the general assembly, at its next session, changed the method of assessment and the nature of the lien imposed by the tax.

Chapter 1, p. 5, Acts 1897, after providing that prop-

erty should be assessed to the person or persons owning or claiming to own the same on the 10th day of January for the year the assessment should be made, if they were known, and, if not known, then to unknown owners, in section 27 enacted as follows:

"That the assessed taxes on all real estate, railroad, telegraph and telephone companies, and all damages and costs accruing thereon shall be and remain a first lien upon such property from the 10th of January of each and every year, for the taxes for that year; and said taxes shall be a lien upon the fee in said property, and not merely upon the interests of the person to whom said property is, or ought to be assessed. Said lien shall attach not only to the interest of the person to whom the property is, or ought to be, assessed, but to any and all other interests in said property, whether in reversion or remainder, or lienors, or of any nature whatever, and the whole proceeding for the collection of taxes, from the assessment to the sale for delinquency, shall be a proceeding *in rem,* and shall not be invalid on account of such land having been listed or assessed for taxation in any other name than that of the original owner."

This system of taxation was re-enacted in 1899, p. 1115, c. 435, section 33; 1901, p. 336, c. 174, section 32; 1903, p. 663, c. 258, section 32.

It is therefore insisted on behalf of the State that it was the intention of the general assembly, since the passage of the act of 1897, that the tax should be assessed

114 Tenn—11

and constitute a lien upon the land itself, and not merely upon an interest therein.

It is insisted on behalf of the appellants that the State has made no provision for the assessment of the remainder interest in these lands, but has assessed the entire value of the land to the life tenant. It is true that the entire assessment in this case was made against John L. Hadley, the life tenant. Section 4 of the act of 1897, and subsequent acts provide that property shall be assessed to the person or persons owning or claiming to own the same on the 10th day of January of the year for which the assessment is made, if known; but section 27 of the act of 1897, and subsequent acts, provide that the taxes shall constitute a lien upon the fee in said property, and not merely upon the interest of the person to whom said property is, or ought to be, assessed. Further, that the lien shall attach not only to the interest of the person to whom the property is or ought to be assessed, but to any and all other interests in said property, whether in reversion or remainder, or of lienors, or of any nature whatever, and the whole proceeding for the collection of taxes from the assessment to the sale for delinquency shall be a proceeding *in rem*, and shall not be invalid on account of such land having been listed or assessed for taxation in any other name than that of the original owner.

This case does not violate the rule which requires an assessment before taxation, for the property was all assessed to the life tenant, but under the express provis-

Hadley v. Hadley.

ions of the act the lien for taxes attached to the entire fee, and thus the remainder interest in the property became liable for the payment of the taxes. The act expressly declares that the proceeding for the collection of the taxes is *in rem*—that is to say, against the property itself—and it is wholly immaterial who are the owners of the separate interests in the property. The purpose of the legislature obviously was to prevent the loss of State, county, and city revenue by the death of the life tenant, because, as already seen, under former decisions of this court it was the duty of the life tenant to keep down the taxes, and the remainder interest in the property was not liable for delinquent taxes due from the life tenant. When, therefore, the life tenant died without having paid the taxes, they became lost to the State.

It is said, however, that the State has provided for the assessment of the interests of the remaindermen to the owners thereof by virtue of subsection 6, section 4, c. 1, p. 7, Acts 1897, as follows:

"That hereafter all mineral, timber or other interests in fee in real estate in this State, owned separate from the general freeholder shall be assessed to the owner thereof, separate from the other interests in such real estate, which other intereests shall be assessed to the owner thereof, all of which shall be assessed as real estate."

This subsection was amendatory of subsection 7 of section 6, p. 205, c. 120, Acts 1895, as follows:

"That hereafter all mineral and timber interests in land in this State purchased by individuals or corporations shall be taxed as real estate."

It will be observed that the act of 1895 only provided that mineral and timber shall be assessed as real estate, while the amendatory act of 1897 added "other interests in fee in real estate owned separate from the general freehold shall be assessed to the owner thereof," meaning, of course, other interests of like character, *ejusdem generis,* and the other interests in the land shall be assessed as real estate to the owner thereof. But this section, *ex vi termini,* only applies to the assessment of minerals, timber, and other like interests. It was not the object of the legislature by this section to provide for a separate assessment of all interests in land to the respective owners thereof, but only for separate assessment of land containing mineral, timber, and other like interests. Hence it has no application in the present case, since it is not shown that this land contains minerals, timber, or other like interests, which is owned separately from the general freehold.

In the note to *Ferguson* v. *Quinn,* reported in 33 L. R. A., 688, the learned annotator has presented a very valuable collection of authorities bearing on this point.

"Under the Alabama statute, and prior to the Code of 1886, a sale of land for unpaid taxes was a sale of the fee simple, and not of the taxpayer's interest only. *Thorington* v. *Montgomery,* 88 Ala., 548, 553, 7 South., 363. In this case the court stated that the failure to pay

---

Hadley v. Hadley.

---

taxes by a tenant for life, or by some one for him, might result in the loss of the entire estate, and that the tax assessed was a charge and lien on the land itself, as well as a legal liability resting on the taxpayer.

"So, in *Veredry* v. *Dotterer*, 69 Ga., 194, 198, where the contest was between the purchaser under a tax *fi. fa.* and a mortgage *fi. fa.* creditor, the purchaser interpleading the mortgagee's levy upon the land, the court stated:

" 'Taxes due the State are not only against the owner, but against the property also, and that without reference to judgments, sales, mortgages, transfers, or incumbrances of whatsoever nature or effect. The only concern as to an owner at all is merely to know against whom the assessment is to be made, whilst the tax itself and the lien therefor are against the property. The State's lien for taxes overrides all others, and follows the property into the hands of whomsoever it may go. If the property itself is subject, it must pay the taxes for which it is liable, regardless of the interest of any and all persons therein.'

"So, in Illinois, the courts have stated that a tax judgment is against the land, and not against a particular individual. The land itself is sold, and not a particular interest in it. If the land is subject to taxation, and the proceedings under the revenue laws have been regular, and the owner has failed to redeem within the time limited by the law, then the whole legal and equitable estate is vested in the purchaser. A new and perfect title is established. This results from the paramount authority of

the State to levy taxes on property within its limits and coerce the payment by subjecting the property to sale. *Atkins* v. *Hinman,* 7 Ill., 437, 449, where the purchaser succeeded in ejectment proceedings against one in possession claiming as heir.

"The same doctrine is held in the latter case of *Dunlap* v. *Gallatin County,* 15 Ill., 7, 9.

"Under the Michigan tax system every sale of lands is a sale of the complete title, and, if legal, all prior titles are cut off by it. *Sinclair* v. *Learned,* 51 Mich., 335, 344, 16 N. W., 672—an action of ejectment by the purchaser at a tax sale against one claiming under mortgage foreclosure sale.

"In *Lacey* v. *Davis,* 4 Mich., 140, 66 Am. Dec., 524, 529, it is stated:

" 'The State, for the support of the government, in the exercise of its eminent domain, imposes the burden of taxation upon all persons and property within its limits. If such taxes are not paid, and real estate be the subject of taxation, it condemns the land for the default, and this condemnation is wrought out by its sale. The title acquired by such sale has nothing to do with the previous chain of title, nor does it in any manner connect itself with it. It is a breaking up of all titles and operates not to support, but to destroy, them.'

"That such doctrine applies to the case of a reversion or a remainder appears clear, as in a later case the court held that, where the owner of a life estate neglects to pay the taxes assessed upon the land, and it is sold for

valid taxes and under valid proceedings, title passes to the grantee, and the only remedy of the remaindermen is against the life owner.   *Watkins* v. *Green,* 101 Mich., 493, 498, 60 N. W., 44.

"All proceedings under the Ohio statute for the sale of land for the nonpayment of taxes are *in rem,* and not *in personam,* and operate upon the land itself, and not merely upon the title of the person in whose name it may have been listed for taxation; the Ohio statute (section 39) declaring that the deed shall vest in the grantee, his or her heirs or assigns, a good and valid title both in law and in equity; and therefore a valid title extinguishes all previous titles, legal or equitable, inchoate or perfect, and the purchaser takes the premises discharged from all previous liens and incumbrances.

"In *Chaplin* v. *United States,* 29 Ct. Cl., 231, 233, the remainderman sought to recover against the government under the act of March 2, 1891, chapter 496, 26 Stat., 822, land that had been sold through the negligence of the life tenant in not paying taxes, and in denying relief the court said:

" 'Although it is the duty of the tenant for life to pay the taxes, the law does not protect the estate of remaindermen and reversioners from the consequence of a forfeiture of the land to the State in case of a sale for taxes.' "

See, also, *Nashville* v. *Cowan,* 10 Lea, 209.

It is said in the case at bar that under this construc-

tion of the law the land of the remaindermen is burdened with a lien constantly increasing, and which may render the use and enjoyment of the property valueless. It may be said, however, in answer to these suggestions, that under a proper construction of the act of 1897 and subsequent legislation the life tenant is still charged with the duty of keeping down taxes, and upon his failure to do so the remaindermen may, by proper legal proceedings, force him to do so by paying the taxes themselves and seeking subrogation to the State, county, or city lien for reimbursement, or, if necessary, file a bill *quia timet* to impound the rents of land and compel their application to taxes during the currency of the life estate, or to sell the life tenant's interest for that purpose.    2 Cooley on Taxation, p. 818.

This remedy was not open to remaindermen prior to the act of 1897, since under the system of taxation then prevailing the taxes constituted no lien on the remainder interest, as decided in *Ferguson* v. *Quinn*, 97 Tenn., 46, 36 S. W., 33 L. R. A., but under the present system, which has been in operation since 1897, the entire fee is burdened with the lien.

It was not the purpose of the act of 1897, nor of subsequent acts, to break down the rule so long established in this State that the life tenant is charged with the duty of keeping down taxes. The reason of the rule is that the life tenant is in the possession and enjoyment of the rents and income of the property, and is its ostensible owner.    *Whyte* v. *Nashville*, 2 Swan, 364; *An-*

*derson* v. *Hensley*, 8 Heisk., 834; *Nashville* v. *Cowan*, 10 Lea, 209; *Stovall* v. *Austin*, 16 Lea, 700; *Ferguson* v. *Quinn*, 97 Tenn., 46, 36 S. W., 576, 33 L. R. A., 688.

But the purpose of the present legislation was to extend the tax lien to the whole fee in the land. The act recites that said lien shall attach not only to the interest of the person to whom the property is or ought to be assessed, but to any and all other interests, whether in reversion or remainder. The act further declares that the whole proceeding for the collection of taxes from the assessment to the sale for delinquency shall be a proceeding *in rem*. The plain mandate of the State constitution is that "all property shall be taxed according to its value," and when the tax is laid upon the property itself it is not illegal from the fact that the interests of life tenants and remaindermen are not assessed separately. Mr. Cooley, in his work on Taxation, volume 2, page 960, says:

"Observing the statutory directions and precautions, and the principles of common law and of public policy, to which reference has been made, the officer may transfer to the purchaser the full interest in the land which has been assessed, and may convey a complete and perfect title, if such is the provision of law on the subject, as in many States is the case. Indeed, as the chief justice of Massachusetts says in a recent decision, 'The prevailing opinion seems to be that a tax title is a new title, and not merely the sum of old titles.' Where the whole title is sold it cuts off and divests estates in re-

mainder or reversion, rent charges, trust estates, homestead interests, mortgages, and other incumbrances, and even back taxes and tax titles, unless other provision is made; but in some States the sale is only of the title which the person taxed had at the time, while in others nothing passes but the title and interest of the parties who were made defendants to the judicial proceedings anterior to the sale. Where the distinct interests of different owners are assessed separately, a sale of the land for a tax against one does not cut off the interests of others. Title to the land of an infant may be passed by the sale. Statutes sometimes provide for selling a leasehold interest in lands; the person taking them who will pay taxes and charges for the shortest term of years. And it is said to be a matter of legislative discretion whether a purchaser at a tax sale shall have an absolute title or a life estate."

Mr. Desty, in his work on Taxation, page 746, says:

"The government cannot wait on slow and tedious processes for the collection of its revenue, and hence the rules and rulings, statutory and otherwise, which have established a separate and peculiar system for the assessment and collection of taxes, and for testing the legality of the assessment. . . . The revenue laws have given two remedies to enforce by action the collection of delinquent taxes—one against the person and the other against the property; and neither depends upon the other for its existence or efficiency. . . . The provision of the revenue act which authorizes the

Hadley v. Hadley.

enforcement of a lien against the land without any personal judgment against the owner is constitutional. Where the tax is imposed on the property as such, without reference to ownership, the proceedings to enforce payment of the tax are against the land itself for the tax due thereon." *Jones* v. *Randle,* 68 Ala., 260; *Ala. G. L. Ins. Co.* v. *Lott,* 54 Ala., 499; *Mayor* v. *Baldwin,* 57 Ala., 61, 29 Am. Rep., 712; *Elyton Land Co.* v. *Ayres,* 62 Ala., 413; *Nat. Commer. Bank* v. *Mobile,* 62 Ala., 284, 34 Am. Rep., 15; *Underhill* v. *Calhoun,* 63 Ala., 216; *State* v. *Yellow Jacket Silver Mining Co.,* 14 Nev., 221; *O'Grady* v. *Barnhisel,* 23 Cal., 294; *State* v. *Sargeant,* 76 Mo., 557; *Hayden* v. *Foster,* 13 Pick., 494; *Thompson* v. *Carroll's Lessee,* 22 How., 422, 16 L. Ed., 387.

As stated by Mr. Cooley, volume 2, page 828:

"Very summary remedies have been allowed in every age and country for the collection by the government of its revenues. That is considered a matter of State necessity. . . . If the State might be deprived of the resources for continuing its existence and performing its regular functions until revenue could be collected by the process provided for the enforcement of debts owing to individuals, it would be continually at the mercy of factions and discontented parties. Obviously, this could not be tolerated. It has been shown in the preceding chapters that the protective principles of the common law are not supposed to be violated by a resort to summary proceedings in these cases. Sum-

mary processes are not necessarily unjust, though they would be so if they deprived the party of a hearing, or if they precluded the opportunity for a patient and deliberate examination of the questions upon which his rights depend, before such rights could be finally concluded and cut off. But it is not the design of legitimate tax legislation to do this in any case. It may depart widely in its methods from those resorted to for the enforcement of rights at the common law, but the fundamental rules of justice will be observed, and, in theory at least, revenue laws will be careful for the protection of individual rights."

And at page 829, the same author says:

"A sovereignty will provide such methods for the collection of its revenue as are suitable to the various taxes laid, and its discretion is only limited by constitutional principles."

In a note to the text the author says that in the absence of constitutional restrictions the soverein power of the State may be exercised almost without limitation in determining how taxes shall be levied and collected. *In re Page,* 60 Kan., 842, 58 Pac., 478, 47 L. R. A., 68.

"No prerogative of sovereignty is of higher importance than the power of taxation, which includes the collection as well as the assessing of taxes." *Stevens* v. *New York & O. M. R. Co.,* 13 Blatchf., 104, Fed. Cas. No. 13,405.

"Where the power exists to impose a tax, the means to be adopted for its collection must, within reasonable

and rationable limits, be a question for the legislature alone." *Nichol* v. *Ames,* 173 U. S., 509, 19 Sup. Ct., 522, 43 L. Ed., 786.

"The levying and collecting of a tax, whether State or county, is a matter solely of statutory creation." *Hinchman* v. *Morris,* 29 W. Va., 673, 2 S. E., 863; *Short* v. *State,* 80 Md., 392, 31 Atl., 322, 29 L. R. A., 404, citing *Appleton* v. *Hopkins,* 5 Gray, 530.

In *Cummings et al.* v. *Cummings et al.* (C. C.), 91 Fed., 602, it was held:

"That under the laws of North Carolina the claim and lien of the State for taxes on real estate is *in rem,* and, although land is in the possession of a life tenant upon whom rests the legal duty of paying the taxes thereon, a sale for their nonpayment conveys the entire title, and not merely the life estate."

It was said in the midst of the opinion that the State of North Carolina has the ultimate ownership of all the land within its boundaries. These lands are held under the State, subject to the payment of the taxes assessed thereon. The lien of the State therefore is *in rem.* The State looks to the *res* for the tax. If the tax be not paid, the State can sell the land. Citing *Moore* v. *Byrd* (N. C.), 23 S. E., 968.

It is further stated that one reason why the life tenant is bound to keep down the tax is that he is bound to preserve the interest of the remaindermen. If the tax be not paid, the inheritance may be forfeited. So the question need not be discussed whether the life es-

tate only has been forfeited, or the reversion left in Cummings after his deed of trust. If anything be forfeited, it is the whole estate, because the tax is assessed on the *rcs.*

In *Osterberg* v. *Union Trust Co.,* 93 U. S., 424, 23 L. Ed., 964, the supreme court of the United States, in dealing with the question whether a mortgagee must see that the taxes are paid, although assessed upon the property subsequent to his mortgage, said:

"A lien for taxes does not, however, stand upon the footing of an ordinary incumbrance, and is not displaced by a sale under a pre-existing judgment and decree, unless otherwise directed by the statute. It deals with the *rcs* without regard to individual ownership, and when it is enforced by sale pursuant to the statute prescribing the mode of assessing and collecting, then the purchaser takes a valid and unimpeachable title."

In *Atkins* v. *Hinman,* 7 Ill., 437-439, the supreme court of the State said as follows:

"The tax is a lien against the land, not against a particular individual. The land itself is sold, and not a particular interest in it. If the land is subject to taxation, and the proceedings under the revenue laws have been regular, and the owner has failed to redeem within the time limited by the law, then the whole legal and equitable estate is vested in the purchaser. A new and perfect title is established. This results from the paramount authority of the State to levy taxes on property

Hadley v. Hadley.

within its limits and coerce the payment by subjecting the property to sale."

We think these authorities dispose of the assignments of error on behalf of the appellants to the effect that said assessment laws are not the law of the land, are inimical to the provisions of section 8 of the constitution of Tennessee and the fourteenth amendment to the constitution of the United States, in that they deprive remaindermen of their property without due process of law.

There is another branch of the case yet to be considered. The attorney general of the State has filed the record for writ of error to that portion of the decree disallowing the penalties, amounting to $208.47, reported by the clerk and master. Said penalties are claimed by the State under section 49, chapter 258, page 681, Acts 1903, as follows:

"That every taxpayer shall pay his State, county, railroad, municipal, highway, school, and all his property and poll taxes to said trustee, except when otherwise provided by law, and said taxes shall be due and payable on the first Monday in October of each year, and shall bear interest from the first day of March following, and in addition a penalty of one per cent for each month the taxes are delinquent to be added on the first day of each month, beginning with the first of March, except as otherwise provided in regard to municipal and poll taxes."

It appears that the assessment acts of 1897, 1899, and 1901 contain a similar provision.

The insistence of the State is that, if said taxes are a lien on the land, and not merely on the life interest, the penalties are also collectible out of the land or its proceeds in the hands of the clerk.

We do not concur in this contention. The remaindermen are in no default in the payment of these taxes. It was primarily the duty of the life tenant to pay them, and the penalties for nonpayment were chargeable to him. The taxes are made a lien on the entire fee in the land, and collectible by a proceeding *in rem;* but there is no authority in the act for onerating the remaindermen with penalties for the default of the life tenant. Under a proper construction of the act the penalties are only chargeable against the person whose duty it was in the first instance to make payment of the taxes.

The decree of the chancellor is in all respects af· firmed.