### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## MIDDLE DIVISION.

## NASHVILLE, DECEMBER TERM, 1923.

THE STATE *v.* OLIVIA H. GROSVENOR *et al.*

### (*Nashville,* December Term, 1923.)

1. **TAXATION.** Realty belonging to nonprofit incorporated school held not taxable where rental therefrom used for educational purposes.

A school chartered as a corporation for general welfare, and not for profit, is not liable for taxes on real property leased by it and not physically used for school purposes, where the rental received therefrom is used for educational purposes. (*Post, p.* 161.)

Cases cited and approved: Ward Seminary v. Mayor & City Council of Nashville, 129 Tenn., 413; University v. Cheney, 116 Tenn., 261; M. E. Church v. Hinton, 92 Tenn., 188.

2. **STATUTES.** Rule "ejusdem generis" not applied to defeat legislative intent.

The rule "*ejusdem generis*" that where general words follow special words which limit the scope of the statute, the general words will be construed as applying to things of the same kind or class as those indicated by the preceding special words, is but a rule

(158)

State v. Grosvenor.

of construction, and will not be applied to defeat the legislative intent clearly ascertained from the ordinary meaning of the words used.  (*Post, p.* 161-166.)

3. **TAXATION.** Statute held to require separate taxation of reversion and leasehold of all realty; "other interests."

Acts 1907, chapter 602, section 5, subsec. 5, providing for separately taxing the reversion and leasehold of "all mineral and timber interests and all other interests of whatsoever kind or character . . . in real estate," *held clearly* intended to require the separate assessment of all interests in land, and was not limited to interests of like character, as mineral and timber interests, under the rule *ejusdem generis, in* view of the fact that every possible mineral, timber and like interest in land was made separately assessable under Acts 1897, chapter 1, section 4, subsec. 6, of the fact that prior to Act of 1907, the phrase "other interests" in Act of 1897 had been limited by the Court to interests in land, such as mineral and timber, and of the rule that every word in a statute must be given some meaning, if possible. (*Post, pp.* 161-166.)

Acts cited and construed:  Acts 1897, ch. 1, sec. 4, subsec. 6;  Acts 1907, ch. 602, sec. 5, subsec. 5.

Cases cited and approved:  Hadley v. Hadley, 114 Tenn., 156;  State v. Wheeler, 127 Tenn., 58.

Case cited and distinguished: National Bank of Commerce v. Ripley, 161 Mo. 126.

4. **TAXATION.** Statute exempting leaseholds under incorporated educational institutions held not applicable to educational corporations not exempt by charter.

Acts 1909, chapter 24, exempting from taxation leasehold estates and improvements thereon *held* under incorporated educational institutions, where the rents are used for purely educational purposes, and where the fee or reversion is exempt from taxation by its charter, is not applicable to an incorporated school not exempted by its charter, but which was exempt by statute. (*Post, p.* 166.)

Acts cited and construed: Acts 1909, ch. 24;  Acts 1907, ch. 602.

5. **TAXATION.** Assessment on realty as whole without separately assessing leasehold held void.

Under Acts 1907, chapter 602, section 5, subsec. 5, providing for separate assessment of interests in realty, an assessment on real property as a whole, without attempting to value the leasehold separately, was void as against the lessee.  (*Post, pp.* 166, 167.)

6. **STATUTES.** Court not concerned with policy of legislation, and cannot on such ground defeat intent.

The supreme court has nothing to do with the policy of legislation, and cannot on such ground construe statutes so as to defeat the legislative intent.  (*Post, p.* 167.)

---

## FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County.— Hon. F. H. HEISKELL, Chancellor.

FRANK M. THOMPSON, Attorney-General, for the State.

A. B. KNIPMEYER, for appellees.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by the State for its own use, and for the benefit of the county of Shelby and city of Memphis to recover taxes assessed against certain real estate in Memphis. The property belongs to the William R. Moore School of Technology, but has been leased to Loew's Metropolitan Theatre Company for a period of ninety-nine years. Both of these parties were named as

defendants to the bill.   They answered, and the cause was set down for hearing by the State upon bill and answer, whereupon the chancellor decreed for the defendants, and the State has appealed.

It appears from the answer that the property was assessed for taxation as a whole.   That is, there was no attempt to assess the leasehold and the reversion separately. Apparently the effort is to hold both the owner and the lessee for the taxes assessed.

The William R. Moore School of Technology is an incorporated educational institution, and conducts a school in Memphis.   The property here involved is not physically used for school purposes.   The lessee uses it as a theatre. All the rental received from the property, however, is used by the owner in educational work.   The William R. Moore School of Technology is chartered as a corporation for general welfare, not for profit.

Upon this state of facts it is obvious that the chancellor properly held that the William R. Moore School of Technology was not liable for taxes on the property—that the reversion was exempt.   *Ward Seminary* v. *Mayor & City Council of Nashville,* 129 Tenn., 413, 167 S. W., 113; *University* v. *Cheney,* 116 Tenn., 261, 94 S. W., 90; *M. E. Church* v. *Hinton,* 92 Tenn., 188, 21 S. W., 321.

The question remains as to whether the leasehold owned by Loew's Metropolitan Theatre Company was taxable. It is conceded that the reversion and the leasehold may be taxed separately, but it is insisted that there is no authority in Tennessee for such procedure.

Subsection 5 of section 5 of chapter 602 of the Acts of 1907 is as follows:

149 Tenn.—11.

"All mineral and timber interests and all other inter-
ests of whatsoever kind or character, whether for life or
a term of years, in real estate, including the interest which
the lessee may have in and to the improvements erected
upon land where the fee, reversion, or remainder therein
is exempt to the owner, and which said interest or inter-
ests is or are owned separate from the general freehold,
shall be assessed to the owner thereof separately from the
other interest in such real estate, which other interest shall
be assessed to the owner thereof, all of which shall be as-
sessed as real estate."

The broad language above would seem to require the
separate assessment of a leasehold such as is owned by
Loew's Metropolitan Theatre Company, but a contrary
contention is made upon the authority of a former decision
of this court.

Subsection 6 of section 4 of chapter 1 of the Acts of 1897
was in these words:

"That hereafter all mineral, timber or other interests in
fee in real estate in this State, owned separate from the
general freehold, shall be assessed to the owner thereof,
separate from the other interests in such real estate, which
other interests shall be assessed to the owner thereof, all
of which shall be assessed as real estate."

In *Hadley* v. *Hadley,* 114 Tenn. 156, 163, 87 S. W., 250,
the court construed the words "other interests" in the sec-
tion of the act of 1897 just quoted to mean other interests
of like character with mineral and timber interests, and
held that the statute did not require the separate assess-
ment of an interest for life or years in land containing
no mineral or timber or like interest separately owned.

In other words, the court applied the familiar rule *ejusdem generis,* and it is urged we should construe the section of the act of 1907 now before us in a similar way.

The rule *ejusdem generis* is that, where general words follow special words, which limit the scope of a statute, these general words will be construed ordinarily as applying to things of the same kind or class as those indicated by the preceding special words. *State* v. *Wheeler,* 127 Tenn., 58, 152 S. W., 1037. This rule is one of frequent application, and is a valuable aid in the construction of statutes.

It is, however, but a rule of construction, and will not be applied to defeat the legislative intent fairly ascertained from the ordinary meaning of the words used in a statute.

"The rule can only be used as an aid in ascertaining the legislative intent, and not for the purpose of controlling the intention or of confining the operation of a statute within narrower limits than was intended by the lawmaker. It affords a mere suggestion to the judicial mind that where it clearly appears that the lawmaker was thinking of a particular class of persons or objects, his words of more general description may not have been intended to embrace any other than those within the class." Lewis' Sutherland Stat. Const., section 437 et seq.

The act of 1897, as construed in *Hadley* v. *Hadley,* supra, certainly provided for the assessment of every conceivable mineral and timber interest and interests of like character. Under its provisions as construed, all mineral and timber interests, and all other interests of that kind, were separately assessable. Every interest of this character was thus covered.

No material change was made in assessment acts sub-sequent to that of 1897 until the assessment act of 1907. By the language used in previous acts every possible mineral, timber, and like interest in land was made sep-arately assessable. When, therefore, the legislature in the act of 1907 employed the language of the earlier acts, and added to this language the words, "all [other inter-ests] of whatsoever kind or character," the intention must have been to go beyond the earlier acts. Otherwise the words "of whatsoever kind or character" would be without meaning.

The entire genus of mineral, timber, and like interests had been embraced in the earlier statutes. The additional words used in the act of 1907 extended the scope of the earlier statutes, or these additional words are devoid of meaning. To reach the latter conclusion we must ignore a cardinal rule of construction, which demands that every word in a statute be given some meaning, if possible.

A common exception to the rule *ejusdem generis* is thus stated:

"If the particular words exhaust the genus, there is nothing *ejusdem generis* left, and in such case we must give the general words a meaning outside of the class indicated by the particular words, or we must say that they are meaningless, and thereby sacrifice the general, to pre-serve the particular, words. In that case the rule would defeat its own purpose." *National Bank of Commerce* v. *Ripley,* 161 Mo., 126, 132, 61 S. W., 587, 588.

For other cases, see Lewis' Sutherland Stat. Const., section 437.

For another reason it is apparent that the act of 1907 meant just what it said in providing that "all other in-

State v. Grosvenor.

terests of whatsoever kind or character" should be as-
sessed separately. *Hadley* v. *Hadley*, supra, was decided
at the December term of 1904. The opinion was handed
down rather late in the term, too late for notice of it to be
taken by the General Assembly of 1905 then in session.
The assessment acts from 1897 up to and including 1905
contain language substantially equivalent to that used in
the act of 1897, and construed in *Hadley* v. *Hadley*. No
change of consequence was made during these years.

In *Hadley* v. *Hadley*, the court held that "other inter-
ests" meant other interests in land, such as mineral and
timber interests. At the very first session of the legis-
lature after the decision in *Hadley* v. *Hadley* became cur-
rent, the legislature substituted in the assessment bill
passed for "other interests" the words, "all other interests
of whatsoever kind or character."

It would be hard to employ language more apt than that
used in the act of 1907 by way of meeting and breaking
through the narrow construction placed upon our as-
sessment acts by *Hadley* v. *Hadley*. The court had said
under previous statutes only mineral, timber, and other
like, interests were separately assessable. The legisla-
ture said by the act of 1907 that mineral and timber "and
all other interests of whatsoever kind or character" were
separately assessable. Considering the history of this leg-
islation, it would be an indefensible use of the rule *ejus-*
*dem generis* to apply it as here invoked.

It was the clear intention of the legislature by the
act of 1907 to separately assess all interests in land,
whether for life or a term of years, if such separate inter-
ests had any value of their own.

A South Carolina statute (6 St. at Large, p. 180,) provided punishment for any person convicted of knowingly and willfully packing or putting into any bag, bale or bales of cotton any stone, wood, trash cotton, cotton-seed or any matter or thing whatsoever—to the purpose or intent of cheating or defrauding any person, etc.   The defendant fraudulently increased the weight of his cotton by the use of water.  The court held the expression "any matter or thing whatsoever" was not restricted by the things enumerated.

"Here there is no incongruity between the specifications and the general expression, and it cannot be doubted that it was the intention of the legislature to punish frauds in packing cotton without regard to the character of the material used."   *State* v. *Holman,* 3 McCord (S. C.), 306.

For other illustrations see Lewis' Sutherland Stat. Const., section 437 et seq.

By chapter 24 of the Acts of 1909, the legislature undertook to exempt leasehold estates and improvements thereon from taxation, where the leases were held under incorporated institutions of learning, and where the rents were used purely for educational purposes, and where the fee or reversion in the property was exempt from taxation "by charter granted by the State of Tennessee."

This act has been referred to in the argument in this case, but manifestly has no application.   The charter of the William R. Moore School of Technology does not undertake to exempt that institution or its property from taxation.   Its exemption is purely statutory.   Chapter 602, Acts of 1907.

In the case before us there was no effort to separately assess the leasehold of defendant Loew's Metropolitan

Theatre Company.   The assessment was made upon the property as a whole—really upon the reversion.   There was no attempt to value the leasehold separately, and such an assessment is therefore void against the lessee.   The chancellor properly dismissed the bill.

Much has been said about the bad effect that would follow a construction of our statutes holding a leasehold interest in property belonging to educational institutions separately assessable.   It is urged that such a holding would greatly impair the rental value of all property owned by educational institutions in this State.   The court has nothing to do with the policy of legislation.   Furthermore, the bad results are not apparent to us.   If property is rented for its full value, if it costs the lessee all its worth, then the leasehold has no separate or taxable value. The value of a leasehold is to be based on the difference between the rent paid and the value of the use of the property.   In most cases the leasehold is worth nothing, for property is ordinarily rented for the value of its use. There are cases, however, when a leasehold is of real value. The legislature intended to tax such leaseholds, and we are not at liberty to give to the act of 1907 a construction that would defeat such intention.

The decree of the chancellor will be affirmed.