Paul Cecil NANCE, by his Guardian, Patsy NANCE, and Patsy Nance, individually, Plaintiffs–Appellees,

and

Stauffer Chemical Company, Intervening Plaintiff,

v.

WESTSIDE HOSPITAL, General Care Corporation, d/b/a Westside Hospital, Middle Tennessee Anesthesiologists, P.C., and Dr. Charles Cannon, Jr., Defendants–Appellants.

Supreme Court of Tennessee, at Nashville.

Feb. 16, 1988.

Rehearing Denied April 5, 1988.

William S. Fleming, Courtney, Fleming & Holloway, Columbia, Thomas H. Peebles, III, Trabue, Sturdivant & DeWitt, Andree Kahn Blumstein, Trabue, Sturdivant & De-

Witt, Nashville, for Paul Cecil Nance and Patsy Nance.

Kent E. Krause, Brewer, Krause & Brooks, Nashville, for Stauffer Chemical Co.

John S. Bryant, Robert E. Cooper, Jr., Bass, Berry & Sims, Nashville, for General Care Corp.

Byron R. Trauger, Leigh Hunt Greenhaw, Doramus, Gideon & Trauger, Nashville, for Middle Tennessee Anesthesiologists.

W.J. Michael Cody, Atty. Gen. and Reporter, Jennifer Helton Small, Deputy Atty. Gen., Nashville, for Attorney General as intervenor.

W.W. McNeilly, Jr., Steven D. Parman, Watkins, McGugin, McNeilly & Rowan, Nashville, for Dr. Charles Cannon, Jr.

## OPINION

FONES, Justice.

In this medical malpractice case, which has not been tried on its merits, the threshold issue is whether worker's compensation benefits are included in a section of the Medical Malpractice Act of 1975 that gives health care providers a reduction in damages for benefits available to tort victims from several specifically named collateral sources "or any other source." If worker's compensation benefits are included, Nance and Stauffer raise two additional issues: (1) whether the section is constitutional; (2) whether the employer, Stauffer, is entitled to enforce its subrogation lien, even though the employee cannot recover any benefits paid or payable under the worker's compensation act?

Paul Nance injured his back while in the course and scope of his duties as an employee of Stauffer Chemical Company. He was admitted to West Side Hospital for disc surgery. A spinal anesthetic was administered by a doctor associated with the Middle Tennessee Anesthesiology group. The surgery was abandoned in an early stage allegedly due to the patient's reaction to the anesthetic. Nance suffered cerebral anoxia, is confined to a nursing home and is allegedly totally and permanently disabled.

This suit was instituted by Paul Nance's guardian against the hospital, the anesthesiology group and the doctor who administered the anesthetic. Stauffer filed an intervening petition wherein it alleged the payment of in excess of $162,000 in medical expenses, $40,728 in temporary total and permanent disability benefits, and liability for substantial future medical payments, all as required of it by the worker's compensation act as Nance's employer. Stauffer asserted its statutory lien against any recovery by Nance for the sums paid and to be paid as worker's compensation benefits.

One of the defenses asserted by defendants was that T.C.A. § 29–26–119, a section of the Medical Malpractice Review Board and Claims Act of 1975, eliminated as damages that may be awarded against health care providers, sums paid or payable to victims of medical malpractice from sources identified therein.[1] Defendants insisted that the statute applied to benefits paid or payable under the worker's compensation act and imposed a ban upon any recovery of such benefits by Nance or Stauffer.

Nance and Stauffer denied that the statute included workers compensation benefits as a collateral source, but if applicable asserted that it was unconstitutional. Nance also asserted that if the statute was

---

1. T.C.A. § 29–26–119. *Damages.*—In a malpractice action in which liability is admitted or established, the damages awarded may include (in addition to other elements of damages authorized by law) actual economic losses suffered by the claimant by reason of the personal injury, including, but not limited to cost of reasonable and necessary medical care, rehabilitation services, and custodial care, loss of services and loss of earned income, but only to the extent that such costs are not paid or payable and such losses are not replaced, or indemnified in whole or in part, by insurance provided by an employer either governmental or private, by social security benefits, service benefit programs, unemployment benefits, or any other source except the assets of the claimants or of the members of the claimants' immediate family and insurance purchased in whole or in part, privately or individually.

applicable and constitutional, no part of his recovery from defendants would be subject to Stauffer's subrogation lien.

All of the parties filed partial summary judgment motions based upon the foregoing contentions. The trial court held that T.C.A. § 29–26–119 applied to worker's compensation benefits and that the statute was constitutional. However, the trial court agreed with plaintiff that since plaintiff was denied recovery to the extent of workers' compensation benefits paid or payable, Stauffer could not assert its subrogation lien granted under the worker's compensation act and dismissed its intervening petition.

After the dismissal of Stauffer's intervening petition, Nance and Stauffer moved for entry of a final judgment as to the dismissal of Stauffer's intervening complaint, pursuant to T.R.C.P. 54.02. The trial judge granted that motion in an order wherein he also granted an interlocutory appeal under T.R.A.P. 9. The Court of Appeals held that Stauffer was not entitled to an appeal as of right, "because all parties and issues have not been disposed of at the trial level." Nevertheless, that court waived the "infirmity" and decided the issues. The intermediate court obviously overlooked the trial judge's action in entering a final judgment against Stauffer on 8 January 1986 pursuant to T.R.C.P. 54.02, the effect of which entitled Stauffer to pursue a T.R.A.P. 3 appeal as of right. See T.R.A.P. 3 and 9 and T.R.C.P. 54.02.

The Court of Appeals held that worker's compensation benefits were not "insurance furnished by an employer" and were not otherwise included in the language of the statute. It also held that worker's compensation benefits were not of the same kind and character as the sources specifically mentioned in the statute, and hence were not included in the phrase "any other source," pursuant to the doctrine of ejusdem generis. The intermediate court held that the legislature could not have intended to include worker's compensation benefits as a collateral source, because of the grossly unjust results of such inclusion upon both the employer and the employee. That

court reinstated Stauffer's intervening petition to enforce its statutory subrogation lien against any recovery by Nance. The constitutional question was pretermitted.

The parties have provided the court with excellent and voluminous briefs. The equities and inequities of including worker's compensation benefits within the scope of the statute have been exhaustively treated. However, this issue involves the interpretation of statutory language and the maxims and principles of statutory interpretation applicable in this instance do not involve equitable considerations.

Statutes pursuing the same general objective as T.C.A. § 29–26–119 are a part of medical malpractice acts adopted by the overwhelming majority of our sister states. They are referred to as "collateral source statutes" because of their common objective of reducing the damages recoverable by tort victims from health care providers, by the amount the tort victim realizes from collateral sources, with the result that a double recovery by the tort victim is avoided. These statutes are designed to abrogate the collateral source rule that prevails in the great majority of the states, to-wit: that benefits received by a plaintiff from a source wholly independent of and collateral to the tort feasor, as a result of the injury inflicted, will not diminish the damages otherwise recoverable from the defendant. See 22 Am.Jur.2d Damages, § 206 et seq. (1965). There is a complete lack of uniformity in the drafting of these collateral source statutes. Almost the only thing they have in common is the listing of insurance by employers and social security benefits as a common collateral source.

The collateral sources expressly identified in the Tennessee statute to reduce recovery are insurance provided by an employer, social security, service and unemployment benefits. Immediately following that listing is the phrase "or any other source". The learned trial judge disposed of the question of legislative intent with respect to the inclusion of worker's compensation benefits as follows:

The collateral source rule abolition covers a much broader category of pay-

ments than those made by insurance, however. Indeed, it includes payments from "any other source." The court must conclude that the legislature meant just what it said—any source. Thus, payments by an employer as worker's compensation are payments embraced by the statute and Nance cannot recover them.

The Court of Appeals held that the phrase "or any other source" invoked the doctrine of *ejusdem generis.* The intermediate court said that worker's compensation benefits were "statutory and *sui generis* " and concluded without further analysis that such benefits "are not of the same kind and character as the sources specifically mentioned in the law, hence are not included in the meaning of the words 'any other source.' " In short, that court simply placed worker's compensation benefits in a class by itself, the only one of its kind, the literal meaning of *sui generis.* We think that analysis falls short of the proper application of the classification aspect of the rule of *ejusdem generis.*

▮▮ The rule *ejusdem generis* is that where general words follow special words, which limit the scope of a statute, the general words will be construed, ordinarily, as applying to things of the same kind or class as those indicated by the preceding special words. The rule can only be used as an aid in ascertaining the legislative intent, and not for the purpose of controlling the intention or of confining the operation of a statute within narrower limits than was intended by the general assembly. *See, e.g. State v. Grosvenor,* 149 Tenn. 158, 258 S.W. 140 (1923); *State v. Wheeler,* 127 Tenn. 58, 152 S.W. 1037 (1912) and Sutherland Statutory Construction (4th ed.) § 47.17 *et seq.*

The statute we are to construe presents a classic example for the application of that rule. We have the general words "or any other source" following the special words, "insurance provided by an employer either governmental or private, by social security benefits, service benefits programs, unemployment benefits." The issue before us is whether the general words include work-

er's compensation benefits. The answer depends upon whether worker's compensation benefits are within the same classification of benefits as those specifically named in the statutes.

An appropriate guide to classifying the objects specifically enumerated is provided by the following from Sutherland Statutory Construction, 4th ed. § 47.18:

In most instances there is a wide range of ways in which classes could be defined, any one of which would embrace all of the members in an enumeration. Germaneness to the subject and purpose of the statute, viewed in terms of legislative intent or meaning to others, is the basis for determining which among various semantically correct definitions of the class should be given effect.

▮▮ We think it is clear that the classification into which the specifically listed benefits in T.C.A. § 29–26–119 falls is that of "collateral source benefits." It is also clear that when an employee is injured by a third party tort feasor while in the scope of his employment, the worker's compensation benefits he receives fall within the scope of the collateral source rule. The fact that the employer has subrogation rights in the event of recovery from a third party tort feasor does not remove worker's compensation benefits from inclusion within the scope of the phrase "any other source" under a proper application of the doctrine of *ejusdem generis.*

However, we think the Legislature intended to exclude worker's compensation benefits from the scope of T.C.A. § 29–26–119 by the inclusion of the modifying phrase "and such losses are not replaced, or indemnified." In order to mitigate the damages, the statute requires that the benefits be paid or payable and also indemnify or replace the tort victim's losses. That phrase avoids a double recovery by tort victims and also removes from the statute any collateral source that has subrogation rights. Where benefits carry a right of subrogation and a legal obligation on the part of the tort victim to repay the collateral source, the tort victim's losses have not been replaced or indemnified.

It follows that worker's compensation benefits are not included within the scope of T.C.A. § 29–26–119, Nance's recovery against defendants cannot be reduced by the sums received, or to be received from Stauffer, and Stauffer may proceed to enforce its subrogation lien in the event of plaintiff's recovery.

We find it unnecessary to address the two alternative issues. This case is remanded to the trial court for trial on the merits. Costs are adjudged against defendant.

HARBISON, C.J., O'BRIEN, J., and SCOTT and CORNELIUS, Special Justices, concur.

## OPINION ON PETITION TO REHEAR

FONES, Justice.

The health care defendants have filed a petition to rehear.

■ Their first complaint is that the Court decided the case on "the basis of a novel ground that had not been briefed, argued or even mentioned by any of the litigants."

We readily acknowledge that the words of the statute that we interpreted as excluding worker's compensation as a collateral source, to-wit: "and such losses are not replaced or indemnified in whole or in part," had not been mentioned, or construed by the litigants or the courts below.

In construing a statute, it is the duty of the courts to give every word and phrase some meaning. *E.g., United Canners, Inc. v. King,* 696 S.W.2d 525 (Tenn.1985).

Legislative intent is derived from construing a statute in its entirety, and it should be assumed the Legislature used every word purposely and that those words convey some intent and have a meaning and a purpose. *E.g., Tennessee Growers, Inc. v. King,* 682 S.W.2d 203 (Tenn.1984).

It is incumbent upon the courts to apply the controlling law, whether or not cited or relied upon by either party. *City of Memphis v. International Brotherhood of Electrical Workers,* 545 S.W.2d 98 (Tenn. 1976); *Simmons v. State ex rel. Smith,* 503 S.W.2d 103 (Tenn.1973). *Cf. Smith v. Norris,* 218 Tenn. 329, 403 S.W.2d 307 (Tenn.1966). Obviously that principle applies to the interpretation of legislative acts as well as the common law.

In addition, T.R.A.P. 13(b) provides that while review in the appellate courts will generally extend only to those *issues* presented for review, other issues may be considered in the court's discretion. The Court did not decide this case on an *issue* not mentioned or briefed, but by taking cognizance of words appearing on the face of the statute that the parties and the courts below had ignored, in spite of the affirmative rule of statutory construction that every word and phrase of a statute must be given some meaning.

The foregoing fundamental precepts provide the authority and indeed the duty of this Court to consider the words of the statute that have caused the defendants consternation. The notion that the courts are restricted to deciding issues as framed by the lawyers is untenable.

Next, defendants say there is a fallacy in our interpretation of the statute because it assumes that an employer paying worker's compensation retains his right of subrogation, *even if* T.C.A. § 29–26–119 barred the employee from recovering economic losses funded thereby. They further complain that the issue of whether or not the employer's subrogation lien would be enforceable if worker's compensation was included as a collateral source in the Medical Malpractice Act was not addressed by the Court, an issue that was briefed by the parties.

The fallacy of that contention is found in the words "even if". The statute construed in its entirety excludes collateral sources such as worker's compensation if the losses paid to medical malpractice victims by those sources must be replaced or indemnified. There simply is no basis for consideration of the issue of whether the employer's statutory subrogation right under T.C.A. § 50–6–112 would be barred *if* worker's compensation was expressly or impliedly included as a collateral source under T.C.A. § 29–26–119.

However, notwithstanding the fact that there is no merit to defendant's "even if" proposition, we considered and decided that issue prior to the release of our opinion herein, adverse to the contention of defendants.

▓ The employer's statutory lien pursuant to T.C.A. § 50–6–112 is expressly granted to the extent of the employee's "net recovery" by "judgment, settlement or otherwise." This Court has defined net recovery to be the total amount collected by the employee in the tort action, less reasonable expenses, including attorney's fees. See Cross v. Pan Am World Services, Inc., 749 S.W.2d 29 (Tenn.1987); and Royal Indemnity Co. v. Schmid, 225 Tenn. 610, 474 S.W.2d 647 (Tenn.1971). The provisions of T.C.A. § 29–26–119 do not repeal or directly deal with the terms of T.C.A. § 50–6–112 that grant employers a subrogation lien for benefits paid or payable under the worker's compensation act and we know of no reason why that section could be rendered ineffective by the collateral source section of the Medical Malpractice Act, absent specific language negating enforcement of that lien.

In United States v. Lorenzetti, 467 U.S. 167, 104 S.Ct. 2284, 81 L.Ed.2d 134 (1984), the United States Supreme Court enforced a federal statutory right of reimbursement granted the government for sums paid its employees under the Federal Employee's Compensation Act, where the employee's third party recovery was precluded by Pennsylvania law from including the economic losses paid under the federal act. Lorenzetti was a federal employee who was injured in an automobile accident in Pennsylvania while in the scope of his employment. He sued the other driver in a Pennsylvania state court. The Pennsylvania No–fault Act prevented him from recovering the medical expenses and lost wages that his government employer paid under the federal act. The federal act provides for reimbursement of the government where an employer receives "money or other property" for damages in pursuit of a third-party claim. Lorenzetti defended the government's suit for reimbursement on the ground that the federal statute should be construed as limited "to damage awards or settlements for economic losses of the sort covered by FECA." The Supreme Court held that the language of the statute gave the government a right of reimbursement to all damages received as a result of third-party liability to an employee and that nothing in the statute confined the reimbursement to the class of expenses covered by FECA.

We think Lorenzetti was correctly decided on sound rationale under statutes and facts similar to this case and we would hold that an employer could enforce his statutory lien pursuant to T.C.A. § 50–6–112, even if worker's compensation was included as a collateral source under T.C.A. § 29–26–119, absent specific language to the contrary.

Defendants also complain that the Court's interpretation of the statute emasculates its effect and what it conceives to be the legislative intent of reducing the impact of medical malpractice recoveries. Tennessee does not stand alone in excluding collateral sources that have the right of subrogation. The legislatures of California, Massachusetts and Rhode Island have provided that where deductions are allowed for collateral source payments, the collateral source loses the right to subrogation. The legislatures of Connecticut, Florida, Illinois, Michigan, Minnesota, Montana, Nebraska, New York, South Dakota and Utah have provided that no reduction of damage awards to medical malpractice victims will be allowed where the collateral source has a right of subrogation. That complaint, and the remainder of defendants' complaints, address themselves to the Legislature.

The petition to rehear is denied. Costs are adjudged against defendants.

HARBISON, C.J., O'BRIEN, J., and CORNELIUS and SCOTT, Special Justices, concur.