IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs February 28, 2024

**ANDRE TERRY v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 120605   Hector Sanchez, Judge**

_____

**No. E2023-00684-CCA-R3-PC**

_____

Petitioner, Andre Terry, appeals the Knox County Criminal Court's denial of his petition for post-conviction relief.  Petitioner asserts on appeal that the post-conviction court erred in concluding that he received the effective assistance of trial counsel, specifically as it related to his failure to procure a plea offer from the State.  The State counters that the post-conviction court properly denied relief.  We ordered supplemental briefing as to whether the post-conviction court had jurisdiction to consider this petition.  We hold that the post-conviction court did not have jurisdiction to consider the petition because the pro se post-conviction petition was deficient, and thus a nullity, and the amended petition was filed outside of the statute of limitations.  Accordingly, we vacate the judgment of the post-conviction court and dismiss the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Vacated, Petition Dismissed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., and CAMILLE R. MCMULLEN, P.J., joined.

Dillon Zinser, Knoxville, Tennessee, for the appellant, Andre Terry.

Jonathan Skrmetti, Attorney General and Reporter; Christian N. Clase, Assistant Attorney General; Charme P. Allen, District Attorney General; and TaKisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual and Procedural History*

**Underlying Offense and Post-Conviction Petitions**

In November 2013, Petitioner and three co-defendants, all juveniles, committed numerous crimes against random victims in connection with Petitioner's and his co-defendants' membership in the "Rollin' 20's Crips" gang. *State v. Terry*, No. E2019-01741-CCA-R3-CD, 2021 WL 3485935, at *1, *17 (Tenn. Crim. App. Aug. 9, 2021), *perm. app. denied* (Tenn. Nov. 17, 2021). Co-defendant Quantavious Williams' case was severed prior to trial, and co-defendant Antonio Marlin testified against Petitioner and the other co-defendants. *Id.* at *1 n.1. A Knox County jury convicted Petitioner and co-defendant Nolandus Sims after a joint trial in 2017 of two counts of felony murder, two counts of especially aggravated robbery, two counts of aggravated robbery, two counts of especially aggravated kidnapping, two counts of carjacking, one count of second-degree murder, and one count of employing a firearm during the commission of a dangerous felony. *Id.* at *1. Petitioner received a life sentence plus fourteen years. *Id.* This Court affirmed his convictions on direct appeal and our supreme court denied review. *Id.*

In February 2022, Petitioner filed a pro se petition for post-conviction relief. However, the pro se petition was neither signed and verified nor contained factual assertions in support of his claims. The post-conviction court entered a preliminary order on February 15, 2022 appointing counsel and ordering the State to respond to the petition. The preliminary order did not mention the petition's lack of signature and verification or factual assertions.

The State filed a motion to dismiss the petition on May 24, 2022, stating that the petition should be dismissed for its lack of signature and verification and factual assertions. The State also denied each of Petitioner's claims. Petitioner did not file a response to this motion.

Petitioner filed through counsel a motion requesting additional time to file an amended post-conviction petition on November 4, 2022. No order ruling on this motion is present in the record.

On December 5, 2022, Petitioner filed an amended petition for post-conviction relief through counsel. The amended petition contains Petitioner's signature and verification as well as factual assertions in support of his claims. The amended petition indicates that it was "given to prison authorities for mailing" on November 3, 2022, (within the statute of limitations) but indicates it was not attested to and executed by Petitioner until December 5, 2022 (outside the statute of limitations). The amended petition did not address the State's dismissal argument.

## Post-Conviction Hearing

At the beginning of the post-conviction hearing, the post-conviction court asked the parties' counsel whether the issue as to Petitioner's signature had been resolved. Counsel for Petitioner stated, "we would submit that the issue has been resolved," referring to Petitioner's signature on the amended petition. The assistant district attorney offered no objection, stating, "I don't know if he needs to sign the original. I did see that he did sign[] the amended." The parties continued with the hearing.

Petitioner testified that trial counsel met with him ten or eleven times during the course of his representation. Petitioner testified that trial counsel never approached him with a plea offer from the State. He testified that trial counsel never came to him with an offer in exchange for his testimony against one of his co-defendants, but that he would have testified against a co-defendant if given the chance. Petitioner recalled that one of his co-defendants received such an offer. Petitioner claimed that he would have considered a plea offer had he been approached with one. Petitioner stated that he asked trial counsel to attempt to resolve the case, even asking trial counsel to bring the prosecutor to speak with him. Petitioner expressed his belief that if he had received a plea offer or been able to testify against a co-defendant, the outcome of his case would have been different.

Petitioner also testified that trial counsel did not put on any proof at his sentencing hearing. According to Petitioner, trial counsel never discussed putting on an expert witness at the sentencing hearing.

Petitioner told the post-conviction court that he "was a child. Following around with the wrong people and wish[ed he] could have t[a]k[en] whatever happened back." Petitioner claimed he "didn't know [any] better" and "wish[ed] [he] had listened to what [his] mama said back then." Petitioner asked for "a second chance at [his] life."

On cross-examination, Petitioner recalled meeting with trial counsel before his juvenile transfer hearing. He recalled that he asked trial counsel for a plea offer at that meeting, but stated that trial counsel told him there was no point because the prosecutor would only offer a 138-year sentence.[1] Petitioner agreed with the prosecutor that this was a "sad case" with "completely innocent victims." Petitioner agreed with the prosecutor that, in light of the facts of this case, he could understand why the State did not make him an offer. To the prosecutor's question as to what else he would have liked trial counsel to do, Petitioner replied, "Fight like he was supposed to." Petitioner claimed that he wanted trial counsel to file various motions and procure various experts, such as a gang expert.

---

[1] There is no proof of a plea offer in the record or testimony. As explained later, trial counsel testified there was no offer made.

Petitioner claimed that this case was "a whole lot of run-around." Petitioner conceded that a gang expert testified at trial, but Petitioner could not name any other witnesses that he wanted trial counsel to call on his behalf.

Petitioner agreed with the prosecutor that he had a litany of other juvenile charges from Knoxville and from Chattanooga for which he was on probation when the offenses at issue here occurred. However, Petitioner denied that he committed the shootings. The prosecutor asked whether, if Petitioner did not commit the shootings as he said, he would have pled guilty to shooting one of the victims. Petitioner said he would have pled guilty to anything to avoid a life sentence.

The post-conviction court interjected and asked Petitioner whether he understood that if the State never made an offer to trial counsel, then trial counsel could not have conveyed an offer to Petitioner. Petitioner replied that he understood. Petitioner testified that he understood that trial counsel could not force the State to extend an offer. Petitioner claimed, "I just wanted [trial counsel] to ask, though."

Trial counsel testified that he had practiced mostly criminal law since his graduation from law school in 2000. Prior to receiving Petitioner's case, trial counsel had handled "a lot" of murder cases, had successfully resolved homicide cases, and had conducted juvenile transfer hearings. Trial counsel recalled that Petitioner was 14 years old when the offenses occurred. Trial counsel testified extensively as to his strategy during the case's progression in juvenile court and in preparation for and during trial; such testimony is not relevant to this appeal.

Trial counsel testified that he communicated well with Petitioner after the transfer to criminal court, more so than other clients because "[Petitioner] was a kid." Trial counsel also communicated with Petitioner's mother.

Trial counsel expressed his confidence that he "spent many times trying to get the State . . . to do something to resolve this case. It just wasn't happening." Trial counsel recalled that the State never made an offer in this case.

On cross-examination, trial counsel conceded that though he could not specifically recall a time when he sought to resolve Petitioner's case, it was his practice to ask the prosecutor whenever he saw her if it could be resolved. Trial counsel testified that he "probably begged [the prosecutor] to do something to avoid going to trial" because the evidence against Petitioner was overwhelming. Trial counsel stated that he kept files of his communications with the district attorney general's office, but that he could not itemize every single conversation he had with the prosecutor.

- 4 -

Trial counsel agreed with Petitioner's post-conviction counsel that "time is of the essence in securing any sort of offer" in the context of criminal cases with multiple co-defendants. Trial counsel could not specifically remember whether he made a formal offer to the prosecutor here but expressed his belief that the prosecutor would not have accepted "[anything] short of him serving the rest of his life in the penitentiary" given the facts of this case. Trial counsel did not believe that he ever offered to the prosecutor that Petitioner would testify against other co-defendants in exchange for a plea offer.

Trial counsel acknowledged that forensic psychology experts can testify as to mitigation at sentencing even if there are no competency questions, "[i]f it's relevant[.]" Trial counsel expressed his opinion that "there was nothing . . . that [the forensic psychologist he consulted in the juvenile proceedings here] had learned that would have helped [Petitioner]" at trial or during sentencing. Trial counsel stated that "the best thing [Petitioner] had . . . for the sentencing phase, was that he was 14[ ]years old when all this happened[.]"

Trial counsel acknowledged that he did not call a gang expert to testify at trial or sentencing to rebut the State's gang expert. Trial counsel testified, "The only way . . . a defense gang expert would have been able to rebut [the evidence of Petitioner's gang involvement] is to lie." Therefore, trial counsel stated, consulting with a gang expert for sentencing purposes would have been "a futile measure."

On redirect examination, trial counsel recalled that there were four co-defendants in this case: two shooters, one of whom was Petitioner; one "master mind"; and one who sat in the car. Trial counsel stated under those circumstances, he would not expect the State to extend an offer to "one of the three people who are associated."

The post-conviction court took the matter under advisement after hearing arguments from counsel for Petitioner and the State.

### Post-Conviction Court's Findings

The post-conviction court denied relief in a written order. As to factual findings, the post-conviction court found that trial counsel's "main objective was to keep Petitioner's matters in the [j]uvenile [c]ourt system" and to avoid transfer to criminal court. Trial counsel raised colorable issues in juvenile court and criminal court. The post-conviction court found that trial counsel "routinely" met with Petitioner to review discovery and discuss trial strategy. The post-conviction court accredited trial counsel's testimony that it "would have 'been a lie'" to suggest that Petitioner was not involved with a gang and he therefore did not seek a gang expert. The post-conviction court found that trial counsel attempted to resolve the case "on numerous occasion[s]" before trial, but the State was

unwilling to resolve the case. The court found that trial counsel explained to Petitioner that the State was not required to make a plea offer. The post-conviction court concluded that trial counsel "vigorously and zealously represented Petitioner pre-trial, during trial, and post-trial."

The post-conviction court accredited Petitioner's testimony that he was upset that another co-defendant received a plea offer in exchange for his testimony against Petitioner and his co-defendant. The post-conviction court explained that the trial record in this matter, however, indicated that the co-defendant who received the offer remained in the car while Petitioner and his non-severed co-defendant committed their crimes.

The post-conviction court found that trial counsel's representation of Petitioner was "anything but deficient" as to trial counsel's performance pre-trial, during trial, and post-trial. As to prejudice, the post-conviction court found that Petitioner had not carried his burden with respect to the sentencing issue because he presented no testimony about what "an expert in a particular field could have offered to potentially avoid the additional fourteen years" Petitioner received in addition to his life sentence. The post-conviction court did not reach the prejudice prong as to trial counsel's performance during the plea negotiation stage.

Petitioner appeals.

### *Analysis*

As to the merits of this appeal, Petitioner argues that the post-conviction court erred in concluding that he received the effective assistance of counsel. Specifically, Petitioner alleges that trial counsel was deficient: (1) for failing to seek a plea offer for Petitioner; (2) for failing to communicate to the State that Petitioner would testify against his co-defendant in exchange for a plea offer; and (3) for failing to present expert witness testimony during sentencing. The State contends that the post-conviction court properly denied relief in all respects. Before we can reach these matters, however, there remains a procedural question we must address.

### I. Post-Conviction Court's Jurisdiction

As an initial matter, we must consider whether the post-conviction court had jurisdiction to consider the post-conviction petition at issue here. We acknowledge that the parties did not raise or address this issue in their initial briefs. However, we are duty-bound to follow the controlling law in every case. *See State v. Eady*, 685 S.W.3d 689, 705 (Tenn. 2024) (citing *Nance v. Westside Hosp.*, 750 S.W.2d 740, 744 (Tenn. 1988) (opinion on petition for rehearing)). "The appellate court shall also consider whether the trial and

appellate court have jurisdiction over the subject matter, whether or not presented for review[.]" Tenn. R. App. P. 13(b). However, in keeping with *State v. Bristol*, 654 S.W.3d 917 (Tenn. 2022) (holding that appellate courts abuse their discretion by deciding cases on issues not raised without affording parties notice and an opportunity to be heard), we ordered supplemental briefing on three issues:

> (1) Was Petitioner's pro se post-conviction petition a nullity because it was neither signed and verified by Petitioner nor contained any factual allegations?

> (2) If the pro se petition was not a nullity, did the amended petition cure any defect in Petitioner's compliance with the statutory requirements for post-conviction petitions?

> (3) If the pro se petition was a nullity and the amended petition did not cure its defects, did the post-conviction court have jurisdiction to consider the petition?

The parties have briefed these issues, and we now deem that issue ripe for review. *See* Tenn. R. App. P. 13(b).

We first address the effect of the lack of signature and verification as well as the lack of factual allegations in Petitioner's pro se petition for post-conviction relief. Post-conviction petitions must be verified by the petitioner under oath and must contain factual allegations to support the petitioner's claims. T.C.A. § 40-30-104(e). Deficient post-conviction petitions, such as those lacking a petitioner's signature and verification, are a nullity. *See Vaughn v. State*, No. W2021-00354-CCA-R3-PC, 2022 WL 1618435, at *7 (Tenn. Crim. App. May 23, 2022), *perm. app. denied* (Tenn. Sept. 29, 2022).

The pro se petition at issue here did not contain Petitioner's signature and verification, nor did it contain any factual allegations in support of Petitioner's claims. Thus, the pro se petition was a nullity. *See Vaughn*, 2022 WL 1618435, at *7. In so concluding, we have not overlooked that the pro se petition was just that—a pro se petition—and that pro se post-conviction petitioners may be afforded an opportunity to amend deficient petitions. T.C.A. § 40-30-106(d); *see Maxwell v. State*, 647 S.W.3d 593, 595 (Tenn. 2019) (order). However, Petitioner had been appointed counsel by the time he was on notice of the issues regarding his signature and factual allegations and, as we explain below, petitioners represented by counsel are not afforded the same latitude.

Petitioner argues that the pro se petition was not a nullity because it was not filed with the assistance of counsel. No law supports this contention. We acknowledge, as

mentioned above and discussed below, that the law requires that pro se petitioners be allowed to remedy technical or procedural deficiencies in their post-conviction petitions. Nonetheless, the pro se petition was a nullity because it was deficient. *See Vaughn*, 2022 WL 1618435, at *7.

Next, we must consider whether the amended petition cured the pro se petition's deficiencies. As noted above, pro se petitioners may correct deficient petitions to bring them into compliance with the statutory mandates. T.C.A. § 40-30-106(d); *see Maxwell*, 647 S.W.3d at 595. This opportunity is not afforded to petitioners represented by counsel. *Maxwell*, 647 S.W.3d at 595. Petitioner was appointed counsel on February 15, 2022, and the State filed its response on May 24, 2022. Counsel for Petitioner was therefore on notice for several months before Petitioner's claim expired that the pro se petition was deficient for lack of Petitioner's signature and factual allegations. Presumably aware of these deficiencies in the pro se petition, counsel attempted to remedy these deficiencies by filing an amended petition that included the elements lacking before: namely, Petitioner's verified signature and factual allegations supporting his claims. Indeed, Petitioner's motion for an extension of time in which to file his amended petition reveals counsel's knowledge that he was running up against the deadline for filing his petition. However, the amended petition at issue here was not filed until December 5, 2022, 18 days after the statute of limitations had run on Petitioner's claim. *See* T.C.A. § 40-30-102(a) ("[A] person in custody under a sentence of a court of this state must petition for post-conviction relief under this part within one (1) year of the final action of the highest state appellate court to which an appeal is taken[.]"); *see generally State v. Terry*, No. E2019-01741-CCA-R3-CD, 2021 WL 3485935 (Tenn. Crim. App. Aug. 9, 2021), *perm. app. denied* (Tenn. Nov. 17, 2021). Because Petitioner's pro se petition was a nullity, and the amended petition filed through counsel was filed after the statute of limitations had expired, the amended petition cannot correct the deficiencies in the pro se petition. *See Vaughn*, 2022 WL 1618435, at *7.

We have considered the above issues because they are necessary to our determination as to whether the post-conviction court had jurisdiction to consider this petition. "No court shall have jurisdiction to consider a petition filed after the expiration of the limitations period" absent certain circumstances not at play here. T.C.A. § 40-30-102(b). When the statute of limitations expired on Petitioner's post-conviction claim, the only filing was a deficient pro se petition. Therefore, because the pro se petition was a nullity though timely filed because of its deficiencies, and the amended petition did not cure its defects because it was untimely filed, the post-conviction court did not have jurisdiction to consider this petition. *See Vaughn*, 2022 WL 1618435, at *7.

We therefore vacate the judgment of the post-conviction court and dismiss the petition.

## II.  Petitioner Would Not Be Entitled to Relief on the Merits

Though we dismiss the petition on procedural grounds, in the event of further litigation, we will address why Petitioner would not be entitled to relief on the merits, even if his petition had been brought into compliance with the statutory requirements.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States."  T.C.A. § 40-30-103.  A petitioner must prove his allegations of fact by clear and convincing evidence. *See id*. § 40-30-110(f).  "Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of conclusions drawn from the evidence." *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 869, 901 n.3 (Tenn. 1992)).  Issues as to the credibility of witnesses, the weight and value to be afforded their testimony, and the factual questions raised by the evidence adduced at the post-conviction hearing are to be resolved by the post-conviction court as the trier of fact. *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997).

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee to criminal defendants the effective assistance of counsel.  To succeed on a claim of ineffective assistance of counsel, a petitioner must prove (1) deficient performance by counsel, and (2) that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975).  If a petitioner fails to satisfy either prong, the claim fails. *Strickland*, 466 U.S. at 687.

Counsel's performance is deficient if it "f[alls] below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688; stated differently, if "the advice given, or the services rendered by the attorney, are [outside] the range of competence demanded of attorneys in criminal cases." *Baxter*, 523 S.W.2d at 936.  Prejudice is established if a petitioner shows that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

A claim of ineffective assistance of counsel is a mixed question of law and fact. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).  We review the post-conviction court's findings of fact de novo with a presumption that those findings are correct unless the evidence preponderates against them. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).  We review the post-conviction court's conclusions of law, however, purely de novo. *Id.*

*Trial Counsel's Performance During Plea Negotiation*

We group together Petitioner's issues as to trial counsel's pre-trial performance because they are closely related. Petitioner asserts that trial counsel's performance (or lack thereof) during the plea negotiation stage was deficient, pointing to (1) trial counsel's failure to secure a plea offer from the State, and (2) trial counsel's failure to offer to the State that Petitioner would testify against his co-defendants. These failures, argues Petitioner, were prejudicial and thus deprived him of the effective assistance of counsel. The State argues that trial counsel performed effectively. We agree with the State.

No criminal defendant has a constitutional right to a plea offer from the State. *See State v. Head*, 971 S.W.2d 49, 50 (Tenn. Crim. App. 1997). Nevertheless, the right to the effective assistance of counsel extends to the plea negotiation stage of a criminal prosecution. *Missouri v. Frye*, 566 U.S. 134, 140 (2012). "In the context of pleas, a defendant must show that the outcome of the plea process would have been different with competent advice." *Smith v. State*, No. M2017-00321-CCA-R3-PC, 2018 WL 3803081, at *5, *perm. app. denied* (Tenn. Oct. 10, 2018) (quoting *Lafler v. Cooper*, 566 U.S. 156, 163 (2012)). Additionally, "[t]here is . . . no obligation on the State to offer any benefit or advantage to a defendant by reason of his pleading guilty[.]" *Harris v. State*, 875 S.W.2d 662, 666 (Tenn. 1994). Ultimately, a petitioner must show: (1) that he would have accepted the offer; (2) the prosecutor would not have withdrawn the offer; and (3) the trial court would have accepted the offer, such that the sentence would have been less than what the petitioner actually received. *Nesbit v. State*, 452 S.W.3d 779, 800-01 (Tenn. 2014). Underlying all of the *Nesbit* elements, of course, is the foundational requirement that the petitioner ever received an offer in the first place.

There is no dispute here that the State refused to make an offer to Petitioner. Rather, the factual dispute was whether trial counsel attempted to resolve the case. Petitioner testified at the post-conviction hearing that trial counsel did not attempt to resolve his case by making an offer to the prosecutor. Trial counsel testified, however, that it was his "routine practice" to attempt to resolve cases and that he was confident that he "begged [the prosecutor] to do something to avoid going to trial" because he knew the State's case against Petitioner was overwhelming. The post-conviction court implicitly accredited trial counsel's testimony and resolved this credibility issue against Petitioner. The record does not preponderate against this finding, and we therefore defer to it. *See Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). Counsel cannot be deficient for failing to force the State to make an offer it was not required to. *See, e.g.*, *Russell v. State*, No. M2021-00774-CCA-R3-PC, 2022 WL 2277160, at *3 (Tenn. Crim. App. June 23, 2022) (citing *Wright v. State*, No. M2010-00613-CCA-R3-PC, 2011 WL 1344322, at *5 (Tenn. Crim. App. Apr.

8, 2011), *perm. app. denied* (Tenn. Aug. 31, 2011)), *perm. app. denied* (Tenn. Oct. 19, 2022). Petitioner has not established that trial counsel was deficient in this respect.

Similarly, Petitioner's argument that trial counsel was deficient by failing to facilitate plea negotiation by offering Petitioner's testimony against his co-defendants comes up short. Trial counsel attempted to resolve Petitioner's case, but the State was unwilling. Trial counsel conceded that he never approached the prosecutor with an offer for Petitioner's testimony but expressed his belief that the prosecutor would not have accepted "[anything] short of him serving the rest of his life in the penitentiary" given the fact that Petitioner was one of the shooters in this case. By contrast, trial counsel noted that co-defendant Marlin received an offer because he remained in the car during the shootings. *See Terry*, 2021 WL 3485935, at *1 n.1. Trial counsel was not deficient for failing to engage in an exercise in futility. *See Hill v. State*, No. M2006-00666-CCA-R3-PC, 2007 WL 1790447, at *8 (Tenn. Crim. App. June 21, 2007) ("Trial counsel is under no duty to conduct further investigation which would be futile[.]"), *perm. app. denied* (Tenn. Nov. 19, 2007). Trial counsel was not deficient in this regard.

Additionally, Petitioner has not demonstrated prejudice with respect to trial counsel's performance during plea negotiation. For one, the post-conviction court determined that trial counsel attempted to resolve Petitioner's case, and the record supports that determination. The State was simply unwilling to resolve it by plea. Second, there is no proof in the record that the State would have resolved Petitioner's case if trial counsel had offered Petitioner's testimony against his co-defendants. Rather, trial counsel testified as to his belief that the prosecutor was unwilling to resolve the case under any circumstances because Petitioner was one of the shooters.

Petitioner would not have been entitled to relief on this issue.

### Trial Counsel's Performance During Sentencing

Petitioner argues that trial counsel was deficient for his failure to put on proof during sentencing. The State asserts that this claim is waived, and in any event, trial counsel was effective and Petitioner was not prejudiced. We agree with the State that this claim is waived.

Appellate briefs must contain an argument "setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record." Tenn. R. App. P. 27(a)(7)(A). "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this [C]ourt." Tenn. Ct. Crim. App. R. 10(b).

Petitioner's entire argument on this point is reproduced below:

Third, [Petitioner] asserts that [t]rial [c]ounsel failed to present any expert witness testimony during sentencing. While [Petitioner] did receive a life sentence for the conviction of first degree murder (felony murder) in his underlying case, proof of mitigation through expert witness testimony realistically could have resulted in the sentencing judge giving [Petitioner] a lesser sentence on the other conviction offenses.

For reasons not apparent to us, Petitioner did not avail himself of the opportunity to address the State's waiver argument by filing a reply brief. *See* Tenn. R. App. P. 27(c). As is plain above, Petitioner did not cite any authority to support his claims or refer to the record in his "argument" on this issue. This claim is waived. *See* Tenn. Ct. Crim. App. R. 10(b). Petitioner is not entitled to relief on this issue.

In any event, Petitioner would not have been entitled to relief on the merits of this issue. Petitioner asserts that trial counsel was deficient because he did not call unidentified experts to testify at his sentencing hearing about unidentified subject matters, and that such expert testimony "realistically" could have changed his sentence.

"To succeed on a claim of ineffective assistance of counsel for failure to call a witness at trial, a post-conviction petitioner should present that witness at the post-conviction hearing." *Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008) (citing *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990)). "As a general rule, this is the only way [a] petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." *Id.* Petitioner failed to call an expert at the post-conviction hearing, and he has not identified any expert witness who could have testified, and does not identify what type of expert should have been called. He does not explain how this testimony would "realistically" have resulted in a lesser sentence. Petitioner therefore, cannot meet his burden to prove that trial counsel's performance in this regard was deficient, much less that it operated to his prejudice. Petitioner would not have been entitled to relief on the merits of this claim.

**CONCLUSION**

Petitioner's unsigned, unverified pro se petition for post-conviction relief that contained no factual assertions was a nullity. The amended pro se petition was not timely

filed.  We therefore hold that the post-conviction court did not have jurisdiction to consider this matter.  We vacate the judgment of the post-conviction court and dismiss the petition.


_____
TIMOTHY L. EASTER, JUDGE