# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

**FILED**

**December 5, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

SANDRA K. BAKER (ABROMS),  )
                             )
     Plaintiff/Appellee,       )
                             )
                             )   Davidson Circuit
VS.                         )   No. 83D-522
                             )
                             )
STATE OF TENNESSEE, ex rel,  )   Appeal No.
GARY D. BAKER,            )   01A01-9509-CV-00428
                             )
     Defendant/Appellant.   )

APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE WALTER C. KURTZ, JUDGE

For the Plaintiff/Appellee:           For the Defendant/Appellant:

James G. Martin                 John Knox Walkup
G.A. Puryear, IV               Attorney General and Reporter
FARRIS, WARFIELD & KANADAY
Nashville, Tennessee            James H. Tucker, Jr.
                                 Assistant Attorney General

# VACATED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves a trial court's discretion not to employ the mechanisms in Title IV-D for the payment and collection of child support. In a post-divorce proceeding seeking changes in visitation and child support arrangements, the Circuit Court for Davidson County declined to order the obligor parent to execute a wage assignment or to pay child support through the trial court clerk. On this appeal, the Attorney General and Reporter, on behalf of the Title IV-D contractor who represented the custodial parent, asserts that the trial court was statutorily required to direct the non-custodial parent to pay child support through the trial court clerk. We agree. Even though requiring the child support to be paid through the trial court clerk will, in this case, extract an unnecessary five percent penalty from the non-custodial spouse, paying child support through the trial court clerk is statutorily required in Title IV-D proceedings.

## I.

Sandra Kabert Baker and Gary D. Baker were divorced in November 1983. Ms. Baker received sole custody of the parties' twin sons who were then approximately four years old. The dissolution of the marriage did little to abate the parties' animosity towards each other, and regrettably, their anger continued to manifest itself in frequent disputes about their children. As one of the several trial judges who have presided over this case noted in 1987, the children have been drawn into a cross fire by the "insatiable litigious nature of the parties." The trial court eventually appointed an attorney to serve as the children's guardian ad litem and to represent their interests.

In 1987 the trial court modified the original custody arrangement to award the parties joint custody of their sons.[1] Ms. Baker received primary physical custody, and Mr. Baker received defined visitation. The parties' bickering over their children did not abate as the years passed. In September 1993, when the children were approximately fourteen, the parties entered into an agreed order giving Mr. Baker primary physical custody and granting Ms. Baker extensive visitation rights. The

---

[1]The trial court pointed out that its decision to grant joint custody was not prompted by the parties' cooperative conduct but rather by its conclusion that neither party should have sole custody.

order stated that Ms. Baker could satisfy her child support obligation either by paying child support or by paying the children's private school tuition.

In November 1994, as the visitation provisions in the September 1993 order were about to expire, Ms. Baker petitioned the trial court to set a specific visitation schedule for 1995 and 1996 and to adjust her child support obligation. Child Support Services of Davidson County[2] responded on behalf of Mr. Baker by asserting that Ms. Baker was in arrears on her previously ordered child support and that the amount of support should be increased in light of the material and substantial changes in the parties' circumstances occurring since the entry of the September 1993 order. Mr. Baker also filed a pro se petition requesting the trial court to set "standard visitation" for Ms. Baker.[3]

The trial court heard the evidence without a jury in March 1995. Thereafter, the trial court prescribed Ms. Baker's visitation schedule through May 1998 and directed Ms. Baker to pay $550 per month in child support. The trial court also found that Ms. Baker owed Mr. Baker $3,000 in unpaid child support and directed her to pay this arrearage at the rate of $100 per month. The trial court did not impose a wage assignment on Ms. Baker and did not require her to pay her child support through the clerk of the trial court.

Child Support Services of Davidson County filed a Tenn. R. Civ. P. 59 motion requesting the trial court to amend its findings or to make additional findings of fact. It asserted that Tenn. Code Ann. § 36-5-101(a)(4)(A), -101(a)(4)(E)(i) (Supp. 1997) required Ms. Baker to pay her child support through the trial court clerk and that the trial court had not made written findings required by Tenn. Code Ann. § 36-5-501(a)(2)(A) (Supp. 1997) to dispense with a wage assignment. In its March 23, 1995 order denying the motion, the trial court stated that no wage assignment was necessary because it was "convinced that Sandra Baker will pay the court ordered

---

[2]Child Support Services is an entity that has contracted with the Department of Human Services to provide Title IV-D child support collection services in Davidson County. It assumed these responsibilities from the District Attorney General for the Twentieth Judicial District in 1992.

[3]Both parties had been represented by private counsel up to this point in the litigation. The circumstances surrounding the entry of Child Support Services of Davidson County into this case do not appear in the record. In light of the evidence in the record of the parties' employment, we have no basis to conclude that either party was financially unable to retain private counsel as they had done during the past ten years of litigation over their children.

child support without a wage assignment, and if the court ordered a wage assignment, its existence would be used by Gary Baker to further alienate the children from Ms. Baker and this would not be in the best interest of the children." On this appeal, the Attorney General and Reporter asserts that the trial court erred by declining to order Ms. Baker to make her child support payments through the trial court clerk.[4]

## II.

The sole question here is whether the trial court may, in its discretion, excuse an obligor parent from paying child support through the trial court clerk. The answer to this question is obvious with regard to Title IV-D child support proceedings. While trial courts have discretion in cases not covered by Title IV-D, Tenn. Code Ann. § 36-5-101(a)(4)(A), -101(a)(4)(E)(i) require child support payments in all Title IV-D cases to be paid through either the trial court clerk or the Department of Human Services. Ms. Baker seeks to avoid this obligation and its attendant additional costs by asserting that this case is not a Title IV-D child support proceeding.

## A.

The Aid to Families with Dependent Children ("AFDC") program is one of the chief means for providing federal financial assistance to disadvantaged families.[5] Rather than administering the program directly, Congress makes AFDC funds available to the states who must administer their programs in compliance with federal standards. Responding to the significant increases in AFDC spending, Congress enacted the Social Service Amendments of 1974[6] which include Title IV, Part D of the Social Security Act. The Title IV-D program is designed to provide incentives for states to improve their own laws and programs aimed at collecting child support from absent parents. For states that bring their laws and programs into compliance with federal standards, Title IV-D provides increased federal matching funds. States

---

[4]The Attorney General and Reporter has not taken issue with the trial court's decision not to require Ms. Baker to execute a wage assignment. Tenn. Code Ann. § 36-5-501(a)(2)(A) specifically permits trial courts to refrain from ordering a wage assignment for good cause.

[5]*See* Social Security Act, Title IV, Part A, 42 U.S.C.A. §§ 601-615 (West 1991 & Supp. 1997).

[6]*See* Social Service Amendments of 1974, Pub. L. No. 93-647, §§ 451-459, 88 Stat. 2337 (1974), codified at 42 U.S.C.A. §§ 651-667 (West Supp. 1997).

who do not comply with the federal requirements face the prospect of reduced AFDC matching funds.

Title IV-D's major premise was that the failure of absent parents to support their children had caused the increase in AFDC spending.[7] Congress believed that AFDC spending could be brought under control by stepping up the state's enforcement of their child support statutes and by requiring parents to assign the child support rights to the State in order to be eligible to receive AFDC benefits.[8] Congress envisioned that the child support collected by the states would moderate the increasing federal AFDC expenditures. Congress also envisioned that more vigorous enforcement of state child support statutes would help custodial parents avoid the necessity of seeking AFDC assistance. Accordingly, the Title IV-D program, from the very beginning, required the states to provide child support collection assistance to all custodial parents, not just those who were receiving AFDC assistance.[9]

In 1977, the Tennessee General Assembly responded to the Title IV-D program by enacting Tenn. Code Ann. § 71-3-124 (Supp. 1997)[10] which requires applicants and recipients of AFDC benefits to assign their right to child support to the State and by enacting Tenn. Code Ann. § 71-3-125 (1995)[11] which empowers the district attorneys general to establish child support enforcement programs in their respective districts. Five years later, the General Assembly enacted Tenn. Code Ann. § 71-3-124(c)[12] specifically requiring the State to initiate child support actions on behalf of individuals who were not eligible for receiving AFDC benefits.

Buoyed by the initial success of the Title IV-D program, Congress enacted the Child Support Enforcement Amendments of 1985 to strengthen the Title IV-D

---

[7]*See* S. Rep. No. 93-1356 (1974), *reprinted in* 1974 U.S.C.C.A.N. 8133, 8145.

[8]*See* 42 U.S.C.A. § 654(5); S. Rep. No. 93-1356, *reprinted in* 1974 U.S.C.C.A.N. at 8152.

[9]*See* 42 U.S.C.A. § 654(4)(A)(ii); S. Rep. No. 93-1356, *reprinted in* 1974 U.S.C.C.A.N. at 8158.

[10]*See* Act of April 20, 1977, ch. 110, 1977 Tenn. Pub. Acts 219.

[11]*See* Act of May 4, 1977, ch. 235, 1977 Tenn. Pub. Acts 566.

[12]*See* Act of April 6, 1982, ch. 764, 1982 Tenn. Pub. Acts 372.

program's child support procedures.[13]  In return for providing matching funds to assist the states in automating their child support collection programs, these amendments placed additional obligations on the states.  These obligations included: (1) establishing mandatory wage withholding for AFDC families,[14] (2) providing for liens and bonds to secure the payment of delinquent child support,[15] and (3) instituting expedited procedures for enforcing child support orders.[16]

The General Assembly responded to Congress's changes in the Title IV-D program by enacting the Child Support Enforcement Act of 1985.[17]  Among other things, this Act requires that child support in Title IV-D cases must be paid through the clerk of the trial court, *see* Tenn. Code Ann. § 36-5-101(a)(4)(A),[18] and that trial court clerks collecting support under the Title IV-D program may collect a fee equal to 5% of the child support payment from the obligor parent.  *See* Tenn. Code Ann. § 8-21-403 (a) (Supp. 1997).[19]  The Act also established procedures for wage assignments.  *See* Tenn. Code Ann. § 36-5-501.[20]  In 1994, the General Assembly reiterated that child support payments in all Title IV-D cases must be paid either to the trial court clerk or to the Department of Human Services, *see* Tenn. Code Ann. § 36-5-101(a)(4)(E)(i),[21] and that the trial court clerks were entitled to a fee for their collection and distribution services.  *See* Tenn. Code Ann. § 36-5-101(a)(4)(C)(iii).[22]

## B.

Two dispositive conclusions can be drawn from the federal and state legislation involving the Title IV-D program.  First, Title IV-D child support collection services

---

[13]*See* Child Support Enforcement Amendments of 1984, Pub. L. No. 98-387, 98 Stat. 1305 (1984).

[14]*See* 42 U.S.C.A. § 666(a)(1), (b) (West Supp. 1997).

[15]*See* 42 U.S.C.A. § 666(a)(4), (6).

[16]*See* 42 U.C.S.A. § 666(a)(2).

[17]*See* Act of June 19, 1985, ch. 477, 1985 Tenn. Pub. Acts 1062.

[18]*See* Act of June 19, 1985, ch. 477, § 6, 1985 Tenn. Pub. Acts at 1063.

[19]*See* Act of June 19, 1985, ch. 477, § 11, 1985 Tenn. Pub. Acts at 1065.

[20]*See* Act of June 19, 1985, ch. 477, § 14, 1985 Tenn. Pub. Acts at 1069.

[21]*See* Act of Apr. 21, 1994, ch. 987, § 1, 1994 Tenn. Pub. Acts 1007, 1009.

[22]See Act of Apr. 21, 1994, ch. 987, § 1, 1994 Tenn. Pub. Acts at 1008.

are available to all custodial parents notwithstanding their financial status. From the outset, Title IV-D has not been limited to parents who are receiving welfare benefits. *See Carelli v. Howser*, 923 F.2d 1208, 1210 (6th Cir. 1991); *Thaysen v. Thaysen*, 583 So. 2d 663, 666 (Fla. 1991); *Cabinet for Hum. Resources v. Houck*, 908 S.W.2d 673, 674-75 (Ky. Ct. App. 1995). Second, a Title IV-D proceeding is commenced when a custodial parent applies to a Title IV-D service provider for assistance in establishing, modifying, or collecting child support. For the purposes of the Title IV-D program, it makes no difference whether the proceeding began as a Title IV-D proceeding or whether the custodial parent initiated the proceeding or is responding to the obligor parent's petition to modify or eliminate an existing child support obligation.

Our task is to enforce statutes as we find them. *See Jackson v. Jackson*, 186 Tenn. 337, 342, 210 S.W.2d 332, 334 (1948). It is not our prerogative to inquire into the reasonableness of a statute or to our policy judgments for those of the legislature. *See State v. Grosvenor*, 149 Tenn. 158, 167, 258 S.W. 140, 142 (1924); *Henley v. State*, 98 Tenn. 665, 679-81, 41 S.W. 352, 354-55 (1897). Rather, when the words of a statute are clear, it is our duty to enforce the statute as written. *See Carson Creek Vacation Resorts, Inc. v. State*, 865 S.W.2d 1, 2 (Tenn. 1993); *In re Conservatorship of Clayton*, 914 S.W.2d 84, 90 (Tenn. Ct. App. 1995).

Even though this case did not begin as a Title IV-D proceeding, it became one when Mr. Baker sought and obtained the assistance of Child Support Services of Davidson County to oppose Ms. Baker's petition to modify her child support and to pursue his claims for increased child support and for unpaid child support. Once this case became a Title IV-D proceeding, the trial court lost its discretion to determine how Ms. Baker should make her child support payments. Even though Ms. Baker had never before paid her child support through the trial court clerk, Tenn. Code Ann. § 36-5-101(a)(4)(A), -101(a)(4)(E)(i) require her now to pay child support through the trial court clerk , and Tenn. Code Ann. § 8-21-403(a) requires her to pay the clerk an additional 5% processing fee.

**III.**

We vacate the portion of the March 23, 1995 order denying Child Support Services of Davidson County's Tenn. R. Civ. P. 59 motion and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to Child Support Services of Davidson County and its surety for which execution, if necessary, may issue.

-8-

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
SAMUEL L. LEWIS, JUDGE